# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### JUNE TERM, 1873.

## HUNDLEY & REES

*v.*

## THE COMMISSIONERS OF LINCOLN PARK.

1. STATUTE—*whether amendatory of previous acts or general.* The act of June 16, 1871, entitled "An act in regard to the completion of public parks and the management thereof," not being so expressed on its face, is not regarded as amendatory of the several acts relating to Lincoln Park, as there may have been other uncompleted public parks to which it could apply, and therefore not within the constitutional rule which requires the law revived or section amended to be inserted at length in the amendatory or new act.

2. CONSTITUTIONAL LAW—*whether county court has exclusive jurisdiction of applications for judgment on special assessments.* Section 18 of article six of the new constitution, which provides, in substance, that county courts shall have original jurisdiction in proceedings for the collection of taxes and assessments, is not regarded as conferring exclusive jurisdiction in such proceedings. Such jurisdiction may be conferred on circuit courts.

3.   Neither is the constitutional provision that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus*, to be construed as making such jurisdiction exclusive.

4.   SAME—*uniformity in the imposition of taxes.*   Under the constitution, taxation is required to be uniform with respect to persons and property within the jurisdiction of the body imposing the same.

5.   SAME—*rule in respect to special assessments.*   The rule of uniformity in respect to taxes is not strictly applicable to special assessments made upon contiguous property for the purpose of local public improvements. They should be made, it seems, upon the principle of the value of the property assessed in proportion to the benefits thereto.

6.   SPECIAL ASSESSMENTS—*must be made on the basis of benefits.*   Where the corporate authorities of two adjoining towns were authorized to make special assessments upon all the lands and lots within their limits, for the completion and enlargement of a public park located partly in each town, not exceeding the benefits thereto, and in the proportion of the benefits thereto, the aggregate not to exceed the probable damages for condemning lands, etc., it was *held*, that the report should show that the assessments were made upon the basis prescribed by the act conferring the authority, and the amount assessed to each tract.

7.   In such a case, where the authorities of the two towns, acting together jointly, after the assessment of the two towns was made, added a large sum upon the property of one of the towns merely on the basis of density of population and superiority of improvements: *Held*, that the assessment could not be sustained, and that it was error to confirm the same.

8.   SAME—*what is a local improvement, within the meaning of the constitution.*   An assessment on property in one town for a local improvement in an adjoining town is not within the meaning of sec. 9, art. 9, of the new constitution, which provides "that the general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements."

9.   SAME—*what are the corporate authorities of town.*   Where a law for the completion of a park situate partly in two towns provided that, "as soon as practicable a special assessment may be made by the supervisors and assessors, corporate authorities of the towns," etc., and it appeared that the supervisors and assessors of the two towns met together as one body, and made the assessment upon property in both towns: *Held*, that this was not a compliance with the law, as the corporate authorities of one town had no jurisdiction to make or participate in the assessment of property in the other town. It seems that the assessment in each town should have been made by its own supervisor and assessor.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a proceeding by the commissioners of Lincoln Park, to confirm a special assessment made by the supervisors and assessors of the towns of North Chicago and Lake View. The circuit court confirmed the same, from which judgment the appellants appealed.

Mr. LYMAN TRUMBULL, and Messrs. SHOREY & NORTON, for the appellants.

Messrs. SPAFFORD, McDAID & WILSON, Mr. JNO. N. JEWETT, and Mr. FRANCIS ADAMS, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The general assembly of this State, on the 8th day of February, 1869, passed an act entitled "An act to fix the boundaries of Lincoln Park, in the city of Chicago, and provide for its improvement." By the last clause of the twenty-first section of this act, the board of commissioners were required to lay out a street not exceeding one hundred feet in width, etc., north from Fullerton avenue, etc. On the fourth of March, 1869, at the same session, this portion of the act of February 8th was repealed.

By an act approved April 19, 1869, the original act was further amended bestowing upon the commissioners power to borrow money, and making other changes in the same. Private acts of 1869, pp. 368, 376, 377.

Under the original act, and the amendments thereto, the commissioners of Lincoln Park proceeded to carry out these several provisions, leaving the park uncompleted at the adoption of the present constitution. After its adoption, the general assembly, on the 16th day of June, 1871, passed an act entitled "An act in regard to the completion of public parks, and the management thereof." Sess. Laws of 1871-2, p. 587.

36—67TH ILL.

Under this act, the supervisors and assessors of the towns of North Chicago and Lake View proceeded to assess upon the property of those towns the probable cost for the enlargement and completion of Lincoln Park. This assessment was confirmed by the circuit court of Cook county over the objections of appellants, and judgment rendered thereon. To reverse this judgment appellants bring the case here, and insist, first, that the last cited act is an amendment of all prior acts in relation to Lincoln Park, and being such, the act has not been passed in conformity with section 13 of article 4 of the constitution.

That section provides, that no law shall be revived or amended by reference to its title only, but the law revived or the section amended shall be inserted at length in the new act.

We are unable to perceive, from the evidence before us, that it is an amendment of the previous acts in relation to Lincoln Park. It is not so expressed on its face. We are unable to say that Lincoln Park was, or is, the only park within this State which had not been completed at the time of the passage of this act. For aught we know, there might have been more than one park laid out and in process of completion within the State, and the authorities having control of these different parks might avail of this act for the purpose of completing them, and therefore we can not say that this act is simply amendatory of previous acts in relation to Lincoln Park. It is, on its face, a public, general law, and, in our opinion, passed in compliance with the constitution. Was the evidence before us, that this act could be made applicable to Lincoln Park only, we would be compelled to hold otherwise, but we see nothing in the act to force such a conclusion.

It is next objected by appellants that the circuit court had no jurisdiction to confirm the assessment.

Sections eight and nine of the act of 1871, under which these proceedings were had, prescribe in what manner judgment shall be obtained on the assessments, and this mode was

pursued in this case. But appellants contend that section 18 of article 6 of the constitution confers exclusive jurisdiction upon the county courts to hear and determine such assessments.

The provision is, in substance, that county courts shall have original jurisdiction in proceedings for the collection of taxes and assessments.

There is nothing in this clause requiring us to hold that, by this grant of original jurisdiction in the specified cases to county courts, it is, necessarily, exclusive. The same constitution, by section 12 of the same article, provides that circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law, etc.

What is necessary to a cause at law? An *actor reus* and *judex*. We find all these constituents in this case, and having them, we are bound to hold it is a cause at law of which the circuit court had jurisdiction.

By the second section of the same article of the constitution, it is provided that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus*. Yet who doubts that circuit courts, being courts of general jurisdiction, can be clothed, by statute, with the power to hear and determine actions on the bonds of collectors of the revenue, and award writs of *mandamus* and of *habeas corpus?* The latter power is expressly conferred upon them by statute. Ch. 67, R. S., title, "Mandamus," 351; ibid. Ch. 48, title, "Habeas Corpus," 269.

It is further insisted by appellants that the assessment is not in compliance with section 10 of article 9 of the constitution, which requires that taxes shall be uniform with respect to persons and property within the jurisdiction of the body imposing the same. That such is the requirement in cases of taxation, has often been decided by this court. *Board of Supervisors of Bureau County* v. *Chicago, Burlington and Quincy R. R. Co.* 44 Ill. 229; *The Chicago and Northwestern Railway*

*Company* v. *The Board of Supervisors of Boone County,* ib. 240; *Darling* v. *Gunn, Town Collector, etc.* 50 ib. 424.    It is claimed, however, by appellees, that these proceedings were had under the first clause of section 9 of article 9 of the constitution, which provides that "the general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment or by special taxation of contiguous property or otherwise." This clause is a grant of power to the general assembly, and how they have, in part, exercised it appears from the act of 1871.    Section 6 of that act provides, "as soon as practicable, a special assessment may be made by the supervisors and assessors, corporate authorities of the towns in which any such park may be situated, on all the lands and lots within the corporate limits of such town benefited by the proposed improvement and enlargement of any such park, and not greater than the benefits thereto, in the proportion to the benefits resulting thereto by such proposed improvement and enlargement, but the aggregate amount of such assessment shall not exceed the probable damages for taking such land and the costs and expenses incident to such taking, the costs and expenses of said appraisement and of making such assessment and collecting the same, and the probable increase of damages, costs and expenses in case appeals shall be taken, of which such corporate authorities shall be the judges.

As we understand this section, the report must show what amount was assessed against each separate tract.    The testimony of Mr. Culver, one of the assessors who signed the report, shows that this was not done.    A gross sum was adopted as the amount, namely: one million two hundred thousand dollars, which included the probable damages.    This was done by the officers of North Chicago and of Lake View jointly, as officers of the same municipality.    It was necessary, under the law, that the report should show that the assessment was made upon the basis prescribed by it.    It appears, however, from Mr. Culver's testimony, that, after the assessment of the

two towns was in fact made, there was added to it the gross sum of two hundred thousand dollars upon the property in North Chicago, merely on the basis of density of population and superiority of improvements.

We are at a loss to perceive by what authority the board of assessors added this large sum, regardless of the assessed value of North Chicago and Lake View, on the property of one of these towns, merely on account of density of population and superiority of improvements.   These are not elements to be taken into the account, but the benefits to property within the territory in which the proposed improvements are to be made.   To hold that this board of assessors have the power, by mere guess-work, to throw upon one portion of this territory two hundred thousand dollars, after its value had been assessed on the basis stated, would vest them with a most arbitrary power, and of the most dangerous tendency.

Though this is an assessment under the clause of the constitution of 1870, which we have quoted, there is, notwithstanding, some analogy between such a case and a case arising under the taxing power.

In the case of *The Board of Supervisors of Bureau County* v. *The C. B. and Q. R. R. Co.* 44 Ill. 229, the railroad company returned to the assessors a schedule of their taxable property in that county, as required by law, which, upon examination, proved to be more liberal in regard to valuation than the other property in the county assessed by the different township assessors, but, notwithstanding this, the board of supervisors added forty per cent to the same.   Upon appeal to this court, it was held the assessment thus made upon the railroad property was unauthorized and void for want of uniformity.

It may be admitted that the principle of uniformity is not the main principle on which the assessments in this case were to be made, but they were to be made on the value of the property in proportion to the benefits thereto.   After they

were made, we can not understand why two hundred thousand dollars should be added on the property of North Chicago. Were we apprised of the rule which governed the board of assessors, we might not consider it unreasonable. Mere density of population and superiority of improvements are not, of themselves, an acknowledged basis in like cases.

It is next insisted by appellants that the assessment is not for a corporate purpose. The provision in section nine of article nine of the constitution, above cited, provides, " that the general assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements." Is the assessment for this park a local improvement within the meaning of this clause ?

From the evidence in the record, it appears this park is to be constructed within the corporate limits of two towns. The property in both the towns is assessed to defray the costs and expenses of acquiring the land and improving the park, and assessments are to be paid by the property owners of those towns, not to pay for lands lying inside, and improvements which are to be made within those towns, but for lands situate outside, and for improvements which are to be made outside of the corporate limits of such towns. Thus, taxes paid on property in North Chicago would be expended for lands and improvements, some of them in North Chicago and some in Lake View, and taxes paid on property situated in Lake View would be expended in North Chicago. How, then, can it be contended that the creation of a park in Lake View by taxes in part paid by North Chicago would be a local improvement of North Chicago, or *vice versa* in Lake View?

We must hold, therefore, that an assessment on property in North Chicago, for a local improvement in Lake View, or *vice versa*, is not within the meaning we are disposed to give this clause of the constitution.

It is further objected by appellants that the assessment was not made by the corporate authorities of Lake View or of North Chicago. Section 6 of the act of June 16, as we have said,

declares, " as soon as practicable, a special assessment may be made by the supervisors and assessors, corporate authorities of the towns in which any such park may be situated," etc. From the record, it appears that the supervisors and assessors of the towns of North Chicago and Lake View met together, and, as one body, made the assessment on the property in North Chicago and Lake View. We are unable to recognize this as a compliance with the law, which requires that the assessment shall be made by the supervisors and assessors, corporate authorities of said towns.

Were the supervisor and assessor of North Chicago, who assessed the property in Lake View, the corporate authority of Lake View, or the supervisor and assessor of Lake View the corporate authority of North Chicago? We think not. The law does not make them such, and we are unable so to regard them. We can not understand by what process the supervisors and assessors of North Chicago could assume jurisdiction over property in Lake View, they deriving none of their powers from the people of that locality. And the same may be said with regard to the supervisors and assessors of Lake View. They have, by law, no jurisdiction over property in North Chicago, and derive none of their powers from its inhabitants.

We forbear comment upon other points made on the record, as those we have discussed are decisive of the case.

For the reasons given, the judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.**

Mr. JUSTICE SHELDON took no part in the decision, being interested in the question.

---

*JONES *v.* COMRS. LINCOLN PARK.

Mr. CHIEF JUSTICE BREESE: This case is, in principle, the same as the preceding case and is decided in the same way. The judgment is reversed and the cause remanded.

*Judgment reversed.*