# THE PEOPLE *ex rel.* Henry B. Miller, Collector, etc.

## *v.*

## P. H. BRISLIN.

1. SOUTH PARK—*constitutionality of amendatory act of* 1871. The act entitled "An act to enable the corporate authorities of two or more towns, for park purposes, to issue bonds," etc., in force July 1, 1871, so far as applicable to the towns of South Chicago, Hyde Park and Lake, without any new vote of the people in the park district, is not in violation of any constitutional provision. Such park district is subject to general legislation the same as any other municipality.

2. STATUTE—*constitutionality with respect to title.* The act entitled "An act to enable the corporate authorities of two or more towns, for park purposes, to issue bonds," etc., is not in violation of section 13 of article 4 of the constitution, as embracing more than one subject, or matters not expressed in its title. The body of the act is germane to the title of the bill.

3. SPECIAL ASSESSMENTS —*for South Park — confirmation conclusive.* Where the park commissioners of South Park, under the requirement of the law, made an assessment upon property contiguous to the park, for benefits, and returned the same to the circuit court, where the same was found to be valid, and confirmed, and divided into yearly installments, on application for judgment for the third yearly installment, it was *held,* that the confirmation of the assessment by the circuit court was *res adjudicata* as to the validity and legality of the assessment and levy, and precluded a reinvestigation of the matters so decided.

4. SAME—*interest of parties making.* Where, by law, interested parties are constituted a tribunal to make special assessments of benefits for a proposed public park, the assessment made by them can not be invalidated by their interest, as the law qualifies them to act.

5. SAME—*officer to apply for judgment in Cook county.* The county of Cook, under the constitution and statutes of the State, is to be considered as under township organization, and therefore the treasurer of the county, as *ex officio* collector, is the proper person to apply for judgment against delinquent lands and lots for taxes and special assessments due thereon.

6. PRACTICE IN SUPREME COURT—*objections not assigned for error.* On appeal to this court, the appellee can not raise an objection in respect to a matter involved in the case, where he has not assigned cross-errors.

APPEAL from the County Court of Cook county.

Mr. JAMES P. ROOT, and Messrs. AYER & KALES, for the People.

Mr. EDWARD ROBY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from the county court of Cook county, prosecuted on behalf of the people of the State, in the name of Henry B. Miller, exercising the powers and performing the duties of county treasurer of Cook county, and *ex officio* collector of the same, and several grave questions are raised on the record. Other cases have been submitted with this, under stipulation of counsel that they shall abide the decision in this case. Points are made in them identical with those made in this case, and other points in addition. We have not deemed it necessary to refer specifically to the separate records and arguments, but have treated them all as one case, and have endeavored to decide all the points raised which we have deemed important.

It appears the relator, Miller, as county treasurer of Cook county, applied to the county court for judgment for the third instalment of a special assessment made by the South Park commissioners pursuant to an act of the General Assembly of this State, entitled "An act to enable the corporate authorities of two or more towns, for park purposes, to issue bonds in

renewal of bonds heretofore issued by them, and to provide for the payment of the same; to make, revise and collect a special assessment on contiguous property for benefits, by reason of the location of parks and boulevards, and to make necessary changes in their location," in force July 1, 1871.

This is a public law, applicable to every county in the State, and is not amendatory of any other act. R. S. 1874, ch. 105.

Prior legislation had made provision for the location and maintenance of a public park for the towns of South Chicago, Hyde Park and Lake, (Sess. Laws, 1869, 1 Vol. 358,) which was amended and supplemented by an act passed 16th April of the same year. Ib. 366.

The first mentioned act was submitted to a vote of the people of these towns, and it was accepted by them by majorities in each of the towns. By it, the location of the park was fixed and its limits defined. The subsequent act made some inconsiderable changes in the first act, and made more definite the description of the park, and legalized and confirmed the vote therefor.

Pursuant to the provisions of these acts, park commissioners were appointed by the Governor, who entered upon the discharge of their duties. Soon thereafter, a question as to their powers and duties was raised in this court, and settled by its adjudication. *The People ex rel. Wilson* v. *Solomon,* 51 Ill. 37.

This case holds that, under the first named act, the towns of South Chicago, Hyde Park and Lake were erected into a park district, and the people of those towns having, by vote, accepted its provisions, the board of park commissioners thereby created became a *quasi* municipal corporation in whom it was competent for the legislature to vest the power to assess and collect taxes within the park district so created, for the special corporate purpose of the creation of a park. Accordingly, it was held it was the duty of the county clerk of Cook county to place the amount required for such purpose, as estimated by these commissioners, in the tax warrants for the towns embraced in the district.

Estimates have been made by the commissioners from time to time, lands purchased and bonds issued therefor, and the money raised by their sale expended in completing the park.

To aid the commissioners to advance the work, the act first above cited, in force July 1, 1871, was passed, and in pursuance of its provisions, the commissioners made an estimate of the probable cost of lands taken and to be taken for the park, together with the expense of obtaining them, and the cost of making and collecting a special assessment to pay the cost of these lands, and the expenses attending their acquisition. The aggregate was estimated at three million three hundred and twenty thousand dollars.

By the first section of the act of 1871, the park commissioners are declared to be corporate authorities of the towns which have united in the establishment of a park, and are authorized to discharge the duties imposed upon them as a corporation or otherwise.

By section 3, power is given to these corporate authorities to make the improvements, establish and maintain them by special assessment or special taxation of contiguous property, and are required to apportion the estimates upon the lands situated in these towns, which these corporate authorities may deem benefited by reason of this local improvement, as near as may be, in proportion to the benefits resulting thereto. Ten days' notice to parties interested is to be given by the corporate authorities, in one or more newspapers, of the time and place of their meeting to make the assessment, when they can be heard touching any matter connected with the assessment.

The same section gives a rule to guide the authorities in making the assessment, and, when computed, it is to be signed by these authorities, or a majority of them, and returned to the circuit court of the county in which such towns are situated, and filed with the clerk of that court, of which ten days' notice is to be given by the authorities, and the further notice that they will apply, on a day named, to the circuit court, for

a confirmation of the assessment.    The requisites of this no-
tice are given in the section.

It is further provided, when it shall appear to the court that
·proper notice has been given, it shall have power to hear, ad-
judge and determine the matter of said application, and all
matters connected therewith.

The corporate authorities, observing all the requirements of
this act, made their assessment roll, which was duly reported
to the circuit court of Cook county, and filed with the clerk
thereof, and, at the June term, 1872, of said court, an order of
confirmation of the assessment was duly entered by the court,
the court finding that all the preliminary steps had been taken
by the corporate authorities, and that the assessment was
made in proportion, as near as may be, to the benefits resulting
from the improvement to each separate lot, block or parcel of
land mentioned in the assessment roll.    And the court further
found, that all and every of the proceedings of the-commis-
sioners in the premises were regular, valid, and in conformity
with law, and that they have done all things required of them
by law, to make this special assessment a legal, just, valid and
binding assessment in whole and every part thereof, and that
the same and every part thereof was a just and fair assess-
ment in the premises.    It was, therefore, ordered, adjudged
and determined by the court, that the assessment and every
part thereof, as set forth in the assessment roll filed herein, be
and the same was in all respects confirmed, and should be
taken to stand good, valid and effectual to all intents and pur-
poses, according to the form and meaning thereof, as made and
returned to the court by the South Park commissioners, and
certified by them.

The court further, in pursuance of this same section, divided
the assessment into annual instalments, fixing the first instal-
ment, and dividing the residue of the assessment into seven
equal instalments, bearing interest at the rate of seven per
centum per annum.

These instalments were ordered by the court to be extended
separately, under each successive year, on the assessment roll,

in such a manner as to show the separate amount chargeable upon the several lots, blocks and parcels of land contained in the tabulated statement in the assessment roll, the court reserving all further matters relating to the division into instalments, and the extensions thereof into and upon the assessment roll, until the same shall be actually carried out and extended agreeable to the order of the court, of which all parties entitled to be heard were required to take notice.

The court having apportioned the gross amount of the estimate, the park commissioners made a tabulated statement thereof, showing the amount chargeable on each lot, block and parcel of land, according to the apportionment and instalments, and reported the same to the circuit court, at the August term, 1872, whereupon the court entered an order confirming in all respects the apportionment of this assessment by the commissioners, ordering that the division into eight instalments, and the extensions thereof as shown upon the assessment roll and tabulated statement, be in all respects ratified, approved and confirmed, and the same be held and taken as good, valid and effectual to all intents and purposes.

By the same section (3), the clerk of the court was required to deliver to the corporate authorities a certified copy of such assessment so confirmed by the court, which is declared to be their authority to collect the same.

It is also provided in this section, if the assessments or any part thereof, so confirmed, shall not be paid at the time or times fixed by the circuit court, it shall be the duty of the corporate authorities to return to the county treasurer, or to some general officer of the county having authority to receive State and county taxes, a list of the lots, blocks and parcels of land so assessed, upon which the assessment shall remain unpaid, and the amount unpaid upon each lot, block or parcel of land.

Appellee and others being delinquent in payment of the third instalment of the assessment, the park commissioners made a return of the delinquent list to the county treasurer, and, by law, *ex officio* county collector, of the amount due and unpaid of this instalment of the assessment, and he, having

altered the descriptions in the return, to conform to the de
scriptions given in the tax book for the State and county taxes,
as authorized by the act of May 2, 1873, entitled "An act in
relation to the collection of taxes and special assessments,"
duly advertised all the delinquent real estate assessed, that he
would apply for judgment to the Cook county court.

It is to the objections made in that court to the rendition of
a judgment against the lots and real estate of appellee, our
attention is called.    They are fifty-three in number, some going
to the form of the proceedings and others to the merits.

The court refused the application for judgment, and the
people appeal.

The merits of the controversy are presented in the points
argued by appellee in this court, and are involved in objection
numbered forty-eight, which is as follows:

"Because the act entitled 'An act to enable the corporate
authorities of two or more towns, for park purposes, to issue
bonds,' etc., approved June 16, 1871, under and by virtue of
which said assessment was levied and confirmed, is void and
unconstitutional, for the reason that the same has never received
the assent or approval of the legal voters of said towns intended
to be affected thereby; and for the reason that it authorizes the
issue of a new and unlimited amount of bonds, bearing interest
at seven per cent, payable annually, for the payment of which,
both principal and interest, the lands and lots of the objectors
are bound; and for the further reason that it authorizes inter-
ested parties to levy assessments upon lots and lands in said
towns; and for the reason that it authorizes the circuit court
to confirm and establish the assessment, when made, without
personal notice to the parties interested; and for the reason
that it imposes heavy burdens upon the property owners and
legal voters of said towns, to which they have never, in any
manner, assented; and for the reason that said act is repug-
nant to the terms of the constitution; and all proceedings under
the same are null and void."

We have given to the objections, and the argument in their

support, as much consideration as possible, and can not think they are tenable.

The first clause of the objection to this act of 1871, enlarging, so to speak, the powers of the corporation of park commissioners, that the same has not been submitted to a vote of the people of the towns composing the park district, and received the approval of the voters thereof, has, in some respects, been considered by this court in *Bank of the Republic* v. *Hamilton County*, 21 Ill. 53.

The fifteenth proposition for discussion in that case was this: "Whether the said amendatory act of 1857, in imposing additional burthens upon the banks without any corresponding advantage or benefit conferred, and not authorized at the time of the passage of the General Banking Law, in its adoption by the people, is not wholly null and void, and in conflict with the constitution of the United States, as impairing the obligation of contracts."

To understand the force and bearing of this proposition, it will be remembered clause 5, of article 10 of the constitution of 1848, title "Corporations," had this provision: "No act of the General Assembly authorizing corporations or associations with banking powers, shall go into effect or in any manner be in force, unless the same shall be submitted at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at said election for and against such law."

The General Assembly, at the session of 1851, passed an act to establish a general system of banking, containing forty-one sections. Section 39 thereof provided for the submission of the act to a vote of the people at the general election, to be held on the Tuesday next after the first Monday of November, 1851, and providing, if the same be approved by a majority of all the votes cast at the election for and against the same, it should go into effect and be in force from and after the date of the election. Sess. Laws 1851, p. 163. The act was approved by a vote of the people at that election, and, thereupon, became

a law.   This law contained all the provisions then deemed ne cessary to the establishment of a proper banking system.

At the next session, held in 1853, an act was passed supplemental to and explanatory of this act, by which important changes were made, and in 1857 other important changes were made in the law, giving rise to the case then in judgment. This act is entitled " An act to amend 'an act to establish a general system of banking, and the acts amendatory thereof.' " Sess. Laws 1857, p. 23.

The sixth section of this law made a great change in the mode of ascertaining the value of the property of the banks on which it was to be assessed, from that provided by the tenth section of the General Banking Law, under which the appellant bank was organized.

It was contended in that case, that this change was void under the clause of the constitution we have cited, it not having been submitted to a vote of the people for their approval, and that it was a violation of their chartered rights.   These questions were duly considered, and this court said:   " While we must be unyielding in resistance to encroachments upon chartered rights which may be in the nature of contracts, we must not forget that these artificial beings must be subject to government, and be subordinate to legislation precisely the same as an individual or natural person."

On the question that the act was invalid, because it was not submitted to the people, the court had no doubt of its validity, and it was so decided.

We think the reasoning and conclusions reached in this case, dispose of so much of objection forty-eight.

There is, certainly, force in the argument of appellee, that, as the legislature had not, of itself, the power to create " corporate authorities," without a vote of the people, then, if that vote was obtained subject to certain limitations and conditions, those limitations and conditions must be observed by and are binding upon both the legislature and the corporate authorities.

This was the kind of argument used in the case of *The Bank of the Republic* v. *Hamilton County, supra,* on which we have commented. The park district, when established in pursuance of the act creating it, became a municipality for certain purposes, and as such came within the domain of legislation. The powers of the corporate authorities of this municipality are subservient to the legislative power, precisely as in the case of other municipalities, and are not interfered with by the present State constitution. On the contrary, their existence is implied by the terms of section 9, of article 9, giving them power to make special assessments for local improvements, or by taxation of contiguous property, or otherwise. This act of 1871 in no degree trenches upon this article, but is in conformity therewith.

The argument seems to go to this extent, that the legislature can not enlarge, and if they can not enlarge, can not curtail the powers of public corporations. In all else, save interfering with such rights as may belong to the domain of contracts, the legislature is supposed to have plenary power.

Should a city, by a popular vote, adopt the act of 1872, for the incorporation of cities and villages, that act would, *eo instanti,* become the charter of the city or village adopting it. It will hardly be contended that amendments to this act, not invading the contract rights of the city or village, will be invalid and nugatory if not submitted to a vote of the people. We think it is a fair deduction from all the constitutional provisions, and, from the very nature of our government, changes demanded by the exigency of the times, in regard to municipal corporations, are within the domain of ordinary legislation.

As to the point that these commissioners were never authorized by the people of these towns to levy a tax of more than three hundred thousand dollars, it will be observed that amount can be levied annually. That sum is not the *ne plus ultra.* They have power to assess a sufficient amount to carry on the enterprise, and if only three hundred thousand dollars are called for annually, no matter what the ultimate expenditure may be, such a call is legitimate, and that amount can be annually

assessed, and it is so assessed by the action of the circuit court dividing the gross assessment into eight annual instalments.

It is clear the object of all this legislation, from 1869 to June 16, 1871, was to provide a public park, and it was intended by the legislature to construct proper machinery for such purpose.

True, the legislation to effectuate this intent must not contravene the constitution. To say this act of 1871 contravenes clause 13 of article 4, providing that no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title, is going very far. What was the subject of this legislation? A public park, and its then existing concomitants. Land for the park was to be acquired, contracts made therefor, bonds issued for the cost and expenses, assessments to pay existing and future liabilities—these were the concomitants which the legislature had in view in passing the act of 1871 with the title it bears, and we can not see that it is obnoxious to any objection.

This court has gone very far to uphold statutes supposed to have been within this objection. The case of *O'Leary* v. *Cook County*, 28 Ill. 534, is a conspicuous instance. The body of the act in question is germane to the title of the bill.

But the point is pressed, that this assessment is not on contiguous property.

This question, and all others bringing up the levy and assessment, have been passed upon by the circuit court, and are *res adjudicata*, and can not now be made in this court. Upon these, there is a judgment pronounced by a court of competent jurisdiction, and there they must rest.

The fact that the commissioners who made the estimate and assessments were property owners in the towns, could not disqualify them. They were made, by the law, the tribunal for the purpose, and were required to take an oath faithfully and impartially to discharge their duties for the public interest. We are of opinion they were not disqualified—the law appointing them qualified them.

The objection made by appellee, that two judgments have

been rendered against the same lands in the same proceeding, is not clearly understood. In this case there was no judgment rendered for these assessments, and that is the cause of complaint here made by the party claiming the judgment. Appellee has not assigned any cross-error, and we do not see how this objection can be made.

A further objection is made, that the county treasurer, as collector, had no power to act in this matter and to apply for judgment, as the county of Cook is not under township organization. Not being so, the sheriff of the county is, *ex-officio*, the collector, and the application for judgment should have been made by him.

That Cook county is under township organization, reference is made to clauses 6 and 7 of article 10 of the constitution.

By a fair implication from the language used in these sections, the county of Cook is not taken out of the class of counties under township organization, that being the condition of the county before the adoption of the constitution; and this is strengthened by reference to section 23, ch. 34, title " Counties." So much of that section as is applicable, is as follows: " The powers of the county, as a body corporate or politic, shall be exercised by a county board, to-wit: In counties under township organization (except the county of Cook), by a board of supervisors, etc.; in the county of Cook, by a board of county commissioners, etc.; in counties not under township organization, by the board of county commissioners." P. 306, and also by clause 11, of article 11, of ch. 139, title " Township Organization." See, also, section 61 of act entitled " Counties," R. S. 1874, p. 313.

The supervisors of towns in Cook county shall perform the same duties as supervisors of towns in other counties under township organization, except that they shall not be members of the county board, or exercise any of the powers thereof. P. 1080.

We think it a fair inference, from all these provisions, the county of Cook must be considered as under township organi-

zation, and, consequently, the treasurer of the county was the proper person to make this application for judgment.

After a careful examination of this record, and full consideration of the points raised upon it, we find no ground justifying the county court in refusing judgment on the application of the county treasurer for judgment. He had ample power by section 172 of the Revenue Law.

The judgment of the county court is reversed, and the cause remanded to that court with direction to enter judgment, notwithstanding the objections.

*Judgment reversed.*