## MARTIN ANDREWS *et al.*

*v.*

## THE PEOPLE *ex rel.* Julian S. Rumsey.

1. CHICAGO PARKS—*what considered in estimating cost.* In ascertaining whether the cost of a park, under the act in relation to parks in Chicago, exceeds the limit fixed by the statute, it is only necessary to consider what is required to be actually paid; and where damages and benefits have been assessed, the excess of damages over the benefits, being what is actually required to be paid, is all that should be considered in estimating the cost.

2. AMENDMENT—*of statute need not be submitted to vote of the people.* Amendments enlarging or restricting chartered rights, acquired under an act submitted to a vote of the people, need not be submitted to such vote.

3. ASSESSMENT—*legality of, can not be questioned when confirmed by court, unless appealed from.* Where an assessment has been confirmed by a court of competent jurisdiction, and no appeal is taken from that judgment, the question as to the legality of the assessment, in a proceeding to collect the same, must be regarded as *res adjudicata.*

4. SAME—*for park purposes in Chicago, power of assessors.* Under the act in relation to parks in Chicago, the assessors, after ascertaining the amount of benefits, as thereby provided, were authorized to divide the amount so ascertained, and make one or more assessments, payable in annual installments; and when this course has been pursued, the assessment for the first yearly installment does not exhaust the power of the assessors.

5. NOTICE—*time of publication.* Where the statute requires a notice to be published three times for three successive weeks, a publication made on Friday and Saturday of the first week, on each day of the next week, and from Monday to Thursday, inclusive, of the third week, is a compliance with the statute, notwithstanding three full weeks have not elapsed between the first and last publications.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. McDAID & WILSON, for the appellants.

Messrs. HOLDEN & MOORE, and Mr. JOHN M. ROUNTREE, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The first position taken by appellants is, that the cost of the parks and boulevards, for which this assessment is levied, exceeds the limitation fixed by the statute.

The record shows that the assessment was made

| | |
|---|---:|
| to pay damages for lands condemned | $174,560 60 |
| And to pay for lands purchased | 873,446 62 |
| Making a total of | $1,048,007 22 |

The limitation imposed by the 5th section of the original act was $900,000, exclusive of improvements (Private Laws of 1859, vol. 1, 345); but in a supplemental act, approved April 19, 1869, the 10th section declares: "For the purchase

of the middle park mentioned in said act (the original act), in addition to the sum of $250,000 limited in said act for its cost, the further sum of $150,000 may be expended, which shall be added to the sum of $900,000 in said act specified for the entire cost of said parks and boulevards." Vol. 1, Private Laws of 1869, page 357.

Under the provisions, therefore, of the original act as amended by the supplemental act, the limit for the cost of the parks and boulevards imposed by the legislature, exclusive of improvements, was $1,050,000, so that the cost of the parks and boulevards does not appear to exceed the limit prescribed; but it is said the cost of the park exceeds the limit prescribed, as the item of $174,560.60 only represents the net damages, the benefits to the various tracts having been deducted, when the total damages, regardless of benefits, should be considered in estimating the actual cost of the park. We do not think the language used in the act will warrant the construction contended for. The board has the power to condemn, and offset damages by benefits, and when this occurs, the actual cost of the park is the amount that has to be paid after deducting the benefits.

The last clause of section 2 of the supplemental act declares: "In case only a part of any lot or piece of ground is condemned for such improvement, and the balance is benefited by such improvement, the damages and benefits shall be assessed in separate sums, and if the one be greater than the other, a balance shall be struck, and the difference carried forward to another column, and the difference, only, shall be collectible or payable;" and section 13 of the original act does not provide that the damages shall be paid, but the sum due the respective parties shall be paid.

In ascertaining the cost of the park, we see nothing in the language of the act from which the conclusion could be drawn that anything should be considered except what is required to be actually paid. But it is urged that the limitation of $900,000 could not be enlarged without the consent of the tax-payer at the polls. The logical effect of the position is, that the original

act is so sacred that it was beyond the power of the legislature, and could not be amended without the consent of the town of West Chicago.

It is true, the powers created by the original act were put in motion by a vote of the people of the locality, yet that fact, of itself, affords no argument to sustain the position that any amendment the legislature thought necessary should also receive the sanction of a vote before it should be enforced.

The Township Organization Law, before it can be in force in a county, must be adopted by a vote of the people at the polls, and yet the power of the legislature to make such amendments as seem for the best, without submitting them to a vote, has never been questioned or denied.

So, too, the act to provide for the incorporation of cities and villages, to become the charter of a city or incorporated town, has to be adopted by a vote of the incorporation, but when adopted it may be amended as the legislature may think best, and the amendment will become the law without any ratification by the municipality.

This park act, by the last section, is declared to be a public law, and we entertain no doubt in regard to the power of the legislature to amend without the amendment being ratified by a vote. This is not, however, a new question in this court. In *The People* v. *Brislin*, 80 Ill. 423, it was held that amendments enlarging or restricting chartered rights, acquired under an act submitted to a vote of the people, need not be submitted to such vote. This decision is conclusive of the question raised.

It is also urged by appellants that the assessment is void, because levied upon lands in West Chicago to pay for an improvement, in part, in the town of Jefferson, and in support of this position we are referred to the case of *Hundley* v. *The Commissioners of Lincoln Park*, 67 Ill. 559.

There is a marked difference between the case cited and the one under consideration. In the former case, the assessment was made by the supervisor and assessor, the corporate authorities of two towns, North Chicago and Lake View, under the

act of June 16, 1871. Laws of 1871–2, p. 587. The supervisors and assessors of the two towns met together, and, as one body, made the assessment on the property in North Chicago and Lake View. This action was held to be illegal, on the ground that the corporate authorities of one town had no jurisdiction to make or participate in the assessment of property in the other town. It was also held that an assessment on property in one town for a local improvement in an adjoining town is not within the meaning of section 9, article 9, of the constitution of 1870, which provides that the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements.

The assessment in this case was made by three assessors, appointed by the circuit court on the 19th day of May, 1870, under the provisions of the original and supplemental park acts, enacted in 1869. It does not appear, from the record, that any portion of the money to be raised in West Chicago is to be expended for a local improvement in another town.

The appellants base their position on the fact that the assessment includes the sum of $17,795.70 as the cost of the Jefferson boulevard, and the evidence of Charles Loding, who says, " that there is included in the total sum for which the West Chicago park assessments are levied, the cost of the land taken for a boulevard, running from the Chicago river west, through section 30, town 40, range 14, and sections 25, 26, 35 and 36, town 40 north, range 13 east, third principal meridian, and that said sections 25, 26, 35 and 36, are situated in the town of Jefferson, in Cook county." Now, conceding that the total assessment includes the cost of the boulevard in the town of Jefferson, it by no means follows that the property in West Chicago is assessed for any portion of that expense. For aught that appears from this record, every dollar of the $17,795.70 may be assessed upon the property in the town of Jefferson. No evidence was introduced to show the location of the lands assessed to pay the cost of the boulevard.

The 7th section of the supplemental act expressly authorizes an assessment upon property in the town of Jefferson for its

share of the improvement. The last portion of the section declares that the commissioners shall have the same right to locate said improvement in that part of section 30, township 4, range 14 east, lying west of the Chicago river, and sections 25, 26, 35 and 36, township 40, range 13 east, as they have under said act in any part of West Chicago, or other territory or lands within the purview of said act—the jurisdiction over other territory and land being expressly continued; and may cause the property therein, benefited thereby, to be assessed for such benefits; and the said commissioners shall have the same jurisdiction to improve, manage and govern the boulevard so located as they have over other parts of the boulevards provided for in said act.

It is conceded, in the argument, that the law authorizes an assessment upon the property in the town of Jefferson for the improvement in that town, and an assessment upon property in the town of West Chicago for the improvement there; and even if the assessors appointed in this case had no power to assess property in West Chicago to pay for the cost of the improvement in Jefferson, which we are not, under the facts in this case, willing to decide, still the appellants have failed to establish that any portion of the cost of the boulevard in Jefferson has been assessed upon the property of West Chicago. *Hundley* v. *The Commissioners of Lincoln Park, supra,* has, therefore, no application here.

It is next urged that the assessment is void, because it does not appear, from the proceedings, that the property is benefited to the amount assessed thereon. The assessment was confirmed by the circuit court—a court of competent jurisdiction. No appeal has ever been taken from that judgment, and, in a proceeding to collect the amount found by the decree of the circuit court, the question raised must be regarded *res adjudicata. The People* v. *Brislin, supra.*

It is also urged that the notice given was not sufficient to give the court jurisdiction to appoint the assessors. The act required the commissioners to give notice, in three or more of the newspapers published in the city of Chicago, of the time

when such application would be made. The statute in force at the time the notice was given, relied upon by appellants to defeat the notice, provides, where a notice is required to be published, and the number of publications shall not be specified, it shall be taken and intended that such advertisement shall be published three times for three successive weeks. The certificates of the printer, attached to the petition, show that the notices were published from the 6th to the 19th day of May, 1870, both inclusive. The first publication, on May 6, was on Friday. The notice was again published on Saturday. This was the first week's publication. On the next week, publication was made each day, which was the second week, and on Monday to Thursday of the third week. It is true, three full weeks did not elapse between the dates of the first and last insertion, nor does the reading of the statute require that it should. The publication was made more than three times, and for three successive weeks; and, under the decision of *Pearson* v. *Bradley*, 48 Ill. 250, we are inclined to hold the notice given a substantial compliance with the statute.

It is next contended that the assessors had no power to make but one assessment. It is, no doubt, true that if the assessors, after ascertaining the benefits to the respective tracts of land, made an assessment embracing the entire amount of benefits, they would have no power, afterwards, to go over the same ground again and duplicate the prior assessment; but the 5th section of the original act expressly authorizes the board to divide the amount of their assessments, and, where it can legally be done, to make one or more assessments, payable in annual installments, which shall be a lien on property, only, for the amount payable each year.

Now, as we understand the record, this course was pursued. The assessors determined that the whole benefits amounted to the sum of $638,575.65; and because this amount was divided into different payments, it is argued the first payment required, which was $222,963.89, was the assessment made, and an assessment for that amount exhausted the powers of the assessors. The action of the assessors in dividing the entire

amount of benefits assessed, into annual installments, was in harmony with the act under which they acted; but were it otherwise, the appellants can not go behind the confirmation of the assessment made by the circuit court, or take advantage of such defects in a collateral proceeding.

It is next urged that the notice of the application for judgment was insufficient to authorize a judgment, as the assessment in the notice was described as being due for the year 1871, when it was not confirmed by the circuit court until March, 1872. The assessment was made by the assessors on the 19th day of September, 1871. By the 13th section of the park act, it is the duty of the circuit clerk, after the assessment is confirmed, to file a copy thereof with the county clerk, and it is the duty of the clerk of the county court to include the same in the general warrants· for each year, until the assessments for the purposes ·authorized by the act shall have been completed, and until the whole sum shall be paid, for the collection of State and county taxes in the town of West Chicago—said assessments in an appropriate column, with the amount to be collected opposite each tract of land.

It is conceded by appellants that the warrant for the collection of the State and county taxes of 1871 did not issue until after July 1, 1872, which was long after the confirmation of the assessment in the circuit court. Under the circumstances, we see no reason why the assessment was not properly included in the warrant for the taxes of 1871, although it was not actually due until 1872. The notice of the collector may have been irregular, yet, as the irregularity did not affect the substantial justice of the tax, we can not hold that the judgment was unauthorized. *Thatcher* v. *The People*, 79 Ill. 597.

It is next urged that the day of sale, as fixed by the notice, was not authorized by law. This question was fully settled by the case of *Karnes* v. *The People*, 73 Ill. 274.

The objection that the affidavit of the town collectors to their returns was sworn to before the wrong officer, was settled by the decision in the case of *Tabor* v. *The People, post*, 202.

As no substantial error appears in the record, the judgment will be affirmed.

*Judgment affirmed.*