STATE OF MISSOURI *ex rel.* GEORGE WEBER, Appellant, v. LEE H. TUCKER *et al.*, Respondents.

Kansas City Court of Appeals, December 20, 1888.

1. **Local Option Law**: NOTICE OF ELECTION UNDER : CHARACTER OF REQUIREMENT. The provisions of the local option law of this state, in relation to the notice for election under said law, are as follows : "Notice of such election shall be given by publication in some newspaper published in the county ; and such notice shall be published in such newspaper for four consecutive weeks, and the last insertion shall be within ten days next before such election." *Held* that there must be four weeks notice (twenty-eight days notice) of the election, the computation to be made by excluding the first day of the notice and including the day of the election.

2. ———— : ———— : ELECTIONS UNDER: HOW FAR NOTICE ESSENTIAL. Elections under the local option act are special and are only to be held at a time to be fixed by the authority designated by statute, after the happening of certain conditions precedent. The notice called for by the law is absolutely essential to the validity of such election.

3. ———— : ———— : ———— : MEANING OF LATTER CLAUSE AS TO LAST INSERTION, "WITHIN TEN DAYS BEFORE ELECTION." The latter clause in the act (relating to notice of election), reading, "and the last insertion shall be within ten days next before such election," does not limit the clause preceding it, as the latter clause can have no reference to the length of the notice, for, under it, the election might be held at any time, from one day to ten days. That clause was simply to insure the election being held at a time close after the notice, and not so far removed as to, perhaps, escape the attention of voters.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED (*with directions*).

Statement of case by the court.

The relator, on the third day of January, 1888, presented to the county court of Saline county his petition and application to keep a dramshop at his stand or place of business in block 28, of the city of Marshall, in said county, whereby he prayed the court to grant him a license to keep a dramshop at his stand or place of business ; which petition contained the proper names subscribed thereto of two-thirds of the tax-paying citizens of block 28 of the city of Marshall, as shown by the last previous annual assessment of said city, asking the court to grant the petitioner a license to keep a dramshop, as provided by "an act entitled an act to amend sections 5438, 5440, 5441, 5442, 5456, 5464 ; to repeal section 5462 of chapter 98, of the Revised Statutes of the state of Missouri, entitled ' of dramshops,' and adding three new sections thereto ;" which said act was passed by the general assembly of the state of Missouri, and approved March 24, 1883. Sess. Acts 1883, pp. 86, 87, 88·and 89. The county court refused to grant the relator a license in response to his application and petition and dismissed the same, whereupon the appellant brought this suit in the circuit court of Saline county by *mandamus*, to compel the county court to grant him a license as a dram-shop keeper, as aforesaid. That, upon the petition filed herein for a *mandamus*,

the judge of the circuit court of said county granted the alternative writ, therein directing the said county court to grant the relator a license to keep a dramshop at his stand as aforesaid, or show cause why they did not, before the court, at the next February term, 1888, thereof. To which alternative writ respondents made return and alleged therein that the relator ought not to have the relief prayed for, for the reason that prior to the filing of his petition and application to keep a dramshop as aforesaid, there had been had and held in the city of Marshall aforesaid, an election to determine whether or not spirituous or intoxicating liquors should be sold within the limits of said city of Marshall, under and according to the provisions of an act entitled "an act to provide for the preventing of the evils of intemperance, by local option, in any county of this state and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city ; to provide penalties for its violation, and for other purposes," approved April 5, 1887 (Laws Mo. 1887, pp. 179, 180, 181 and 182), which said election was held in the city of Marshall (a city having more than twenty-five hundred inhabitants), on Tuesday, October 11, 1887, and that the result of said election was as follows :   That there were cast for the sale of intoxicating liquors three hundred and twenty-four votes, and that there were cast against the sale of intoxicating liquors three hundred and fifty-three votes, and that the majority of the votes cast at said election was twenty-nine against the sale of intoxicating liquors. The relator filed an answer admitting an election was held in the city of Marshall, but denied the validity of such election for the following, among other reasons : (3) Because no notice of such election so held on the eleventh day of October, 1887, was given by publication in any newspaper published in the county of Saline, or in said city of Marshall, as required by law, and because no notice was published in such newspaper for four consecutive weeks, as required by said act, and because no

notice of the result of such election was ever published in any newspaper for four insertions as required by law. Upon the issues thus made up the parties went to trial. It was admitted at the trial of this cause that the relator had complied in every respect with the law in relation to the licensing of dram-shop keepers in cities of over twenty-five hundred inhabitants, and that he was a person of good character; and that his application and petition was signed by more than two-thirds of the resident taxpayers of the block in said city where the proposed dramshop was to be kept, as shown by the last previous annual assessment of said city ; that the city of Marshall was a city of the fourth class, having over twenty-five hundred inhabitants ; and it stands admitted by the pleadings that the relator is entitled to the relief prayed for, unless the alleged election relied on by the return of respondents to the alternative writ of *mandamus* herein, is a valid election, and prohibits the county court of Saline county from granting a license under the existing laws regulating the licensing of dramshops. Notice of the election was published in the " Saline County Progress," that the first insertion was on September 17, the next on September 24, the next on October 1, and the fourth and last on October 8, 1887, and that the election was held on Tuesday, October 11, 1887. The court held the election valid and dismissed relator's petition.

*Leslie Orear* and *Davis & Wingfield*, for the appellant.

(1) The petition read in evidence, by the respondents, was not sufficient in law to confer upon the mayor and board of aldermen of the city of Marshall, jurisdiction to make an order for an election to be held in such city, to be voted at by the qualified voters, to determine whether or not spirituous or intoxicating liquors should be sold within the corporate limits of said city. The petition and records of the city must show the jurisdictional facts before a valid order for an election can be made by the body having legislative functions in said city.

*County v. Cowan*, 54 Mo. 234; *Whitely v. County*, 73 Mo. 30; *Zimmerman v. Snowden*, 88 Mo. 218; Laws 1887, p. 179, sec. 2. The statute under which the election in controversy was held confers special jurisdiction upon the mayor and board of aldermen of the city to perform the powers therein conferred, and all the facts showing jurisdiction must affirmatively appear on the record or journal of that body. *City v. Gleason*, 93 Mo. 33, and cases cited; *Blize v. Castlio*, 8 Mo. App. 290. Nor can the defect in such record or journal be supplied by *nunc pro tunc* entries. *Blize v. Castlio*, 8 Mo. App. 290. Nor is parol evidence admissible to vary, contradict, or supply the record of the legislative body of a city of the fourth class, in a proceeding of this character. Such record cannot be collaterally attacked. R. S. 1879, sec. 4950. (2) The conditions of the statute authorizing an election have not been complied with, in that the body having legislative functions in the city of Marshall did not act on the petition, and made no order with reference thereto. The body having legislative functions in a city of the fourth class is the mayor and board of aldermen. R. S., secs. 4940, 4948, 4949, 4950, 4965. The board of aldermen alone could not legally make an order for the election provided for by the local option act, and the election could be legally ordered only by an ordinance passed in regular form, or by resolution duly passed by the board, and approved by the mayor. The evidence shows that the mayor gave no sanction to the order for an election made by the board, and the election is, therefore, illegal and invalid. Local Option Act, Laws of Mo. 1887, p. 180, sec. 2; *Thrush v. Cameron*, 21 Mo. App. 394; *Thompson v. Boonville*, 61 Mo. 282; *Saxton v. Beach*, 50 Mo. 488; *Saxton v. St. Joseph*, 60 Mo. 153; *Ex rel. Rafter*, 89 Ill. 337; *St. Louis v. Gleason*, 93 Mo. 33; Dillon on Mun. Corp. [2 Ed.] sec. 245. (3) The election provided for under this act is a special election,—the time and place must be fixed by the mayor and aldermen, in the manner provided by the statute; and its validity depends upon its being legally

called and upon legal notice being given by publication for four consecutive weeks, before said election could be legally held. McCrary on Elections [3 Ed.] sec. 145 ; Cooley's Const. Lim. sec. 603 ; *George v. Township*, 16 Kan. 72 ; *Stevens v. People*, 89 Ill. 337. (4) No notice of the election in controversy was given for the statutory period required and the election is, therefore, illegal. The statute requires the notice of such election to be published for four consecutive weeks, and the last insertion shall be within ten days next before the election. The first insertion of the notice read in evidence was made in the "Saline County Progress," on the seventeenth day of September, 1887, and the fourth insertion on the eighth day of October, 1887, and the election in controversy was held on the eleventh day of October, 1887, thereby giving only twenty-four days notice before holding said election, and said notice being for a less time than the period required by the statute, the election can have no validity or binding force. McCrary on Elections [3 Ed.] sec. 145, *et seq. ;* Cooley's Const. Lim. sec. 603 ; Cooley on Tax. 245, 249, and notes ; *Haywood v. Russell*, 44 Mo. 252 ; *Bank v. Stumpf*, 73 Mo. 314 ; *Early v. Doe*, 16 How. 610 ; *Bank v. Bank*, 89 N. Y. 397 ; *Kap Meier v. O'Neil*, 47 Wis. 593 ; *Collins v. Smith*, 57 Wis. 284 ; *Ward v. Walters*, 63 Wis. 39 ; *Stanford v. Warn*, 27 Cal. 171 ; *Beal v. Ray*, 17 Ind. 554 ; *People v. Martin*, 12 Cal. 409 ; *Haddax v. County*, 79 Va. 677 ; *Barry v. Lank*, 5 Cald. 588; *In matter White Hall*, 47 Pa. St. 156 ; *Hoover v. Mear*, 16 Kan. 11 ; *George v. Oxford Twp.*, 16 Kas. 72 ; *Reed v. Sexton*, 20 Kas. 195 ; *Stephens v. People, supra.* A week is a definite period of time, commencing on Sunday and ending on Saturday, and being thus composed of seven days, four weeks cannot consist of less than twenty-eight days. *Roukendorff v. Taylor*, 4 Peters, 361. Wherefore, we respectfully insist that the circuit court erred in refusing the peremptory writ prayed for by the relator and the writ should be awarded.

' *Boyd & Sebree*, with *Alf. F. Rector*, Prosecuting Attorney, for the respondents.

(1) The petition for the local option election here was sufficient. The law does not make the record of a municipal corporation the only evidence of its acts, although our statute requires a journal to be kept. While parol evidence is not admissible to contradict or to vary the record of such corporation, it is admissible to show facts omitted to be stated on the record. Dillon Mun. Corp. secs. 300, 301 and note ; *Williams v. Cormack*, 61 Am. Dec. 515 ; *Gas Co. v. St. Louis*, 11 Mo. App. 75 ; *Bigelow v. Amboy*, 1 Dutch. [N. J.] 297 ; *Taymouth v. Koehler*, 35 Mich. 25 ; *Bank v. Danbridge*, 12 Wheat. 64; *United States v. Fillebrown*, 7 Pet. 28 ; *Hutchinson v. Pratte*, 11 Ver. 402. (2) The authorities cited in support of the appellant's second point (*Thrush v. Cameron, Thompson v. Boonville*, and citations following) are all cases in which the mayor and city council have been given discretionary powers, that is, to act or not to act in reference to the particular matter. In such cases they must act in the particular mode required by the statute giving authority. But in the case at bar, the mayor and board of aldermen had no discretion ; they were bound to determine the fact as to whether or not the petition was signed by one-tenth of the qualified voters of the city, and if it was so signed, the law imperatively required them to order the election. There was no discretion about it. The mayor could neither dissent nor veto. See Acts 1887, p. 180. (3) The notice was in accordance with the local option law and was published as required by that law. *Haywood v. Russell*, 44 Mo. 252; *Early v. Doe*, 16 How. 610 ; *Olcott v. Robinson*, 21 N. Y. 150 ; *Wood v. Morehouse*, 45 N. Y. 368 ; *Garrett v. Moss*, 20 Ill. 250 ; *Andrews v. People*, 84 Ill. 28 ; *Ricketts v. Hyde Park*, 85 Ill. 810 ; *Sweet v. Sprague*, 55 Me. 190. (4) In this case it does not appear, either by the allegations of the petition, or the evidence, that any portion of the electors or any elector was deprived of his vote from

any want of notice. From the record in this case it appears that the great body of the electors knew the time, place and purpose of the election and participated in it. And in such case the mere fact that notice was not published in the exact mode required by the statute will not be sufficient to invalidate the election. McCrary. on Elections [3 Ed.] secs. 143, 144, 145, 146, 147 and 148. (5) In this case the question as to whether or not the local option law had been adopted by the city of Marshall was a fact which the county court had to determine from the evidence before it; and *mandamus* will not lie to compel the court to decide that question in a particular way. The returning board had declared and published the result of the election. *Miltenberger v. County Court*, 50 Mo. 172; *State ex rel. v. Young*, 84 Mo. 90; *Barnes v. Gottschalk*, 3 Mo. App. 111. Respondents respectfully submit that there is no error shown by the record.

ELLISON, P. J.—The question with us for decision is whether notice for an election to be held October 11, 1887, under the local option law, which is given by four consecutive insertions in a newspaper, beginning on September 17, continuing September 24, October 1, and ending October 8, thus covering a period of only twenty-four days, is the notice required by the law. The following is that part of the provision in relation to the subject, which it is necessary to notice: "That notice of such election shall be given by publication in some newspaper published in the county, and such notice shall be published in such newspaper for four consecutive weeks. and the last insertion shall be within ten days next before such election." Elections under the local option act are special and are only to be held at a time to be fixed by the authority designated by statute, after the happening of certain conditions precedent. The notice called for by the law is absolutely essential to the validity of such election. *McPike v. Penn*, 51 Mo. 63; *Stephens v. People*, 89 Ill. 337; *George v. Township*, 16 Kan. 72; *Haddax v. County*, 79 Va. 677.

The first insertion being on September 17, and the election occurring on October 11, by excluding the first and including the last day, which is the usual mode of computation, we have a period of only twenty-four days between the first insertion and the election. Is this a legal notice? The question may be stated thus: Does the law require a notice of four weeks, of seven days each, or does it only require a sufficient period of time to cover four consecutive weekly insertions, though such time be less than twenty-eight days? In other words must there be four weeks notice of the election or a less time? Our answer is that there must be four weeks notice,—twenty-eight days notice,—of the election, the computation to be made by excluding the first day of the notice and including the day of the election. In this conclusion we are sustained by the authority of adjudicated cases, by the reading of the statute and by the object intended by the law-makers. A similar question was considered by the supreme court of the United States in *Early v. Doe*, 16 How. 610, where the statute was that public notice of the sale of real estate should be given, " by advertisement inserted in some newspaper once in each week for at least twelve successive weeks," and it was held that the meaning of the law was that the notice should be twelve full weeks or eighty-four days before the sale. It is said in that case that " when we say that anything may be done in twelve weeks, or that it shall not be done for twelve weeks, after the happening of a fact which is to precede it, we mean that it may be done in twelve weeks or eighty-four days, or, as the case may be, that it shall not be done before." In that case, as in this, the *mode* of notice was by publishing, the *time* of notice was for four weeks here, and twelve weeks there. In *Market National Bank v. Pacific National Bank*, 89 N. Y. 397, the statute required an order of publication to be published " in two newspapers  *  *  *  not less than once a week for six weeks," and it was held that the provision meant six full weeks or forty-two days.

MILLER, J., in that case very aptly says : " The number of weeks is specified and not the number of times. * * * It does not provide for a publication six times within six weeks, but for a time not less than once a week for six consecutive weeks. The publication evidently means rather more than printing the notice. Its object is to give notice by means of the newspapers, and it cannot be claimed that such notice is given for six weeks before that time expires." In *In re North White Hall Township*, 47 Pa. St. 156, there was an effort to divide the township ; commissioners were appointed for that purpose who were required to give notice of the time and place of meeting, in one English and one German newspaper " three weeks before the time of meeting." The court said this requirement did not have reference to the number of insertions, but to the time. To the same effect are the cases of *Collins v. Smith*, 57 Wis. 284 ; *Stanford v. Warne*, 27 Cal. 171 ; *Reed v. Sexton*, 20 Kan. 195.

Of the authorities called to our attention by the respondents most all are on statutes essentially unlike the one we are now considering. *Olcott v. Robinson*, 21 N. Y. 150, was an execution sale under a statute, as stated by the court, requiring that the notice " shall be publicly advertised for six weeks successively, as follows : 1. A written or printed notice thereof shall be fastened up in three public places in the town where such real estate shall be sold. 2. A copy of such notice shall be *printed once in* each week in a newspaper of such county, if there be one." The reasoning of the writer of the opinion in that case is in favor of the view taken by respondents, but so far as the case can be taken as a precedent it is not applicable here. However it may be looked upon in this respect, standing alone, its force must be considered as annihilated by the later case in 89 N. Y. 397, *supra*. In *Andrews v. People*, 84 Ill. 28, the statute required that the " advertisement shall be published three times for three successive weeks." This evidently meant that the advertisement should be inserted three times, in successive

weeks, and this is what was properly held. In *Ricketts v. Hyde Park*, 85 Ill. 110, the statute is not set out and we are not able to say what force the decision should have. What little can be gleaned from it is not in accord with respondents' view. In *Sweet v. Sprague*, 55 Maine, 190, the statute only provided for notice to be published "three weeks successively." At first glance the case from our own supreme court of *Haywood v. Russell*, 44 Mo. 252, would appear to sustain the position taken by respondents, but it is more apparent than real. That case construes section 17, page 1225, Revised Statutes, 1855, which requires an order of publication to be published in a newspaper "for four weeks successively, the last insertion to be at least four weeks before the commencement of the term at which defendants are required to appear." The meaning of the first clause of this is limited by the last. The evident object of the section is to give four full weeks notice to a defendant before the first day of court,—how ? By publishing in a newspaper for four consecutive weeks, the last insertion to be at least four weeks before the sitting of court. The notice required is four weeks, which represents the time, the length of the notice. The *mode* of notice is by publication which must be completed before the time of the notice begins to run. It is not a notice till it has been inserted in a newspaper four successive weeks ; it is then, so to speak, a full-fledged notice and it must run at least four weeks before court. It is therefore well held by the court, in that case, that the publication need only be inserted in four consecutive weeks in such manner as that the last insertion will be at least four weeks before the commencement of the term.

No such considerations as the foregoing affect or limit section 3, Acts 1887 ; the ordinary meaning of the words employed are not restrained by any portion of the section, but taken together they clearly show the intent of the legislature. The notice is to be published for four consecutive weeks. The word "for" in this connection has reference to time. Webster defines the

word to mean "the space or time through which an action or state extends; duration, continuance." " To guide the sun's bright chariot *for* a day." It will be observed that the statute does not say the notice shall be inserted four times in as many consecutive weeks, nor does it say that it shall be published four times, but it says that it shall be published *for* four weeks. Now when we say that anything shall be done for a certain time, we mean that the period named shall cover that time, and when that time is twenty-eight days, it cannot be said to be covered by a period of twenty-four days, any more than it could be said to be covered by one day. If the law means only that there shall be four insertions in consecutive weeks, regardless of whether that will cover the full period of four weeks, in that case an election could be held within seventeen days after the first publication. The requirement for insertions in consecutive weeks does not necessarily require that such insertions shall be on corresponding days of the week, or that they shall be one week apart. It would only be necessary to insert once in each consecutive week. Thus insertions on Saturday, and on the three following Mondays would only cover a period of sixteen days, and yet it would fill the requirement of four insertions in four consecutive weeks. If we suppose the law had said that the notice should be published for one week, instead of for four weeks, then if for four weeks means four insertions, without regard to time, for one week would mean one insertion without regard to whether the period of a week had elapsed — and thus an election might be held on one day's notice. The latter clause in the act quoted above, reading " and the last insertion shall be within ten days next before such election," evidently does not limit the clause preceding it, as the latter clause can have no reference to the length of the notice, for under it the election might be held at any time, from one day to ten days. That clause was simply to insure the election being held at a time close after the notice and not so far removed as to, perhaps, escape the attention of

voters.   Our construction of section 3 is made to appear
to meet the intention of the law-maker by reference to
section 5 of the same act.   That section, in providing for
notice that the law has been adopted, reads, "the county
court or municipal body ordering such election shall pub-
lish the result of such election once a week for four con-
secutive weeks in the same newspaper in which the
notice of election was published ; and the provisions of
this act shall take effect and be in force, from and after
the date of the last insertion of the publication," etc.
The difference in the two sections is wide.   The words,
"once a week" and "the date of the last insertion,"
make it plain that it was intended by the last section
that the notice should be printed four times in four con-
secutive weeks without regard to the number of days.
The contention of respondents would lead to an identi-
cal construction of the two sections, which we think
would be wholly unwarranted.

The result following from the views herein expressed
is, that we regard the election as void, and that the rela-
tor is entitled to a peremptory writ.   The judgment will,
therefore, be reversed and the cause remanded with
directions to the circuit court to issue the writ.   The
other judges concur.