## WADDELL *vs.* THE MAYOR, &c. OF THE CITY OF NEW-YORK.

Under the provisions in the charter of the city of New-York, and in the act of April 9, 1813, authorizing the common council to order and direct the *altering and amending* of any street in said city, it has the power to change the grade of a street after it has been once established.

The charter makes the common council the judges of the *necessity* of such an alteration ; and it is not the province of the supreme court to revise their judgment, or to examine into their motives.

No estimate and assessment of the expenses of a contemplated alteration in the grade of a street are necessary.

The owner of property situated upon a street, the grade of which is ordered to be changed, by the common council, is not entitled to compensation, as a condition precedent, for a mere consequential damage to his property, or for an alledged obstruction of his right of way, occasioned by such change of grade.

The corporation, in the exercise of their right to depress the grade of a street or avenue, are bound by the rule *sic utere tuo ut non alienum laedas*, to the same extent that individuals would be. But that is the extent of their liability

THIS was an appeal by the defendants, from an order made at a special term, granting an injunction to restrain the defendants from making any alteration in the grade of certain streets and avenues of the city of New-York, or from removing or disturbing the wall, walks, trees, shrubbery or other property of the plaintiff, or from doing any thing which might injure or tend to injure his lands, buildings or property, or his free use and enjoyment thereof. The facts are stated in the opinion of the court.

*C. Haring*, for the plaintiff.

*H. E. Davies*, for the defendants.

*By the Court*, EDWARDS, J. It appears from the complaint of the plaintiff in this cause, that he is the owner in fee simple of certain lands in the eighteenth ward of the city of New-York,

situated on the fifth avenue and Thirty-seventh and Thirty-eighth streets in said city, between the fifth and sixth avenues; that these avenues and streets were laid out under the act of April 3d, 1807; that after the passing of this act, and before the year 1844, the defendants, in common council convened, established a certain grade for said avenue and streets adjoining said lands of the plaintiff, and that they were regulated in pursuance of such grade. It further appears that the plaintiff purchased the lands after the grades had been established, and that after such purchase he erected a large and expensive dwelling house and other buildings, and made other and valuable improvements, all of which were erected and made according to the then established grades of the said avenue and streets. The complaint then alledges that the defendants have passed an ordinance to alter and amend the said grades in such manner as to cause a great depression thereof, and prays that the defendants may be restrained from making such alteration, for the reasons stated in the complaint.

The first ground taken by the plaintiff's counsel upon the argument was, that the defendants having once established the grade, have no right to change it.

The charter under which the defendants were incorporated declares that the common council of the city "shall have full power, license, and authority, not only to establish, appoint, order and direct the making, and laying out of all other streets, lanes, alleys, highways, water courses, and bridges, not already made or laid out, but also the *altering*, *amending* and repairing all such streets, lanes, alleys, highways, water courses and bridges, heretofore made or laid out, or hereafter to be made or laid out, in and throughout the said city of New-York, in such manner as the said common council for the time being, or the major part of them, shall think or judge to be necessary and convenient for all inhabitants and travellers there." (*Kent's Charter*, 58, 59.) And by section 175 of "an act to reduce several laws relating particularly to the city of New-York into one act," passed April 9th, 1813, (2 *R. L.* 407,) the defendants were authorized, amongst other things, to order and direct the

*altering and amending* of any street; and provisions were made pointing out the manner in which such alteration and amendment should be carried into effect. It is under these provisions of the charter, and of the act of 1813, that the defendants contend that they have the power to make the proposed changes in the avenues and streets before mentioned.

In the case of *Callender* v. *Marsh*, (1 *Pick.* 418,) it was held that the words "*repair* and *amend*," conferred a power similar to the one which is claimed in this case. In the case of *Graves* v. *Otis*, (2 *Hill*, 466,) the words "*repair and regulate*," were held to convey a similar power to commissioners of highways; and the case of *Callender* v. *Marsh* was cited with approbation. In the case of *Oakley* v. *Trustees of Williamsburgh*, (6 *Paige*, 262,) the defendants were restrained from altering a grade already established. But the grounds of that decision were, that the act of the legislature under which the grade was made, declared that it should be permanent; and the chancellor, in giving his opinion, states that another provision contained in the act under which the defendants were incorporated, and which authorized the altering and amending of streets, did not apply to the streets then in question; and his decision proceeds upon the assumption that if it had so applied, the defendants would have possessed the power to change a grade which had already been established.

It would thus appear from judicial exposition, that the words *alter and amend*, as used in the city charter, and in the act of 1813, give all the power which is claimed by the defendants in this case. It is a power which has often been exercised; and in cases where a street has too abrupt an ascent for the uses of a large commercial city, it would seem necessary that it should be exercised. That such a necessity has been felt, is evident from the course of legislation upon this subject. By the act of April 10th, 1823, (*Laws of* 1823, *p.* 146, 147,) it was in substance provided that the levels of streets as delineated on certain maps, which were to be made in pursuance of that act, should be permanently fixed and established. This provision

was found by experience to be impracticable; and in the year 1827 it was repealed. (*Laws of* 1827, *p.* 246.)

But it was contended on the part of the defendants that if such power is vested in the defendants, it can only be exercised in cases of necessity, and that such necessity does not exist in this case. The answer to this is that the charter makes the common council the judges of the necessity; and it is not our province to revise their judgment, or to examine into their motives.

The next ground which was taken on the part of the plaintiff was that no estimate and assessment of the expenses of the contemplated alteration have been made, and that no assessment for said expenses has been collected.

After the thorough examination which this question has recently undergone in the superior court, in the case of *Wetmore* v. *Campbell,* and the very conclusive reasoning by which it is shown, that no such estimate or assessment is necessary in a case like the one before us, we consider it sufficient to refer to the opinion which was delivered on that occasion.

But it is contended that the defendants have no right to make the proposed alteration without making compensation for the injury which it is alledged that the plaintiff will sustain. This depends upon the question whether his property is to be taken.

It was contended on the argument, that the right of way of the plaintiff in the avenue and streets adjoining his premises, is property, within the meaning of the constitution, and that he is entitled to compensation for such right of way, before the grade can be altered.

This assumes that he is to be deprived of his right of way. But such is not the fact. His right will remain the same as it now exists. The elevation of the highway will be changed. But the right of way will neither be obstructed nor impaired.

It is said, however, that by the digging down of the avenue and streets, the walls of the plaintiff will be injured. The answer to this is, that if the plaintiff's property should be subjected to such an injury, it would not be such damage as would entitle him to compensation, within the meaning of the consti-

tution. No property would be taken. And he is not entitled to compensation as a condition precedent, for mere consequential damage. If the defendants have the right to depress the grade of the avenue and streets in question, they are bound by the rule *sic utere tuo ut non alienum laedas,* to the same extent as individuals would be. But that is the extent of their liability.

Finally, it was contended that the act of April 3d, 1807, under which the avenues and streets in question were laid out, established a permanent grade. A reference to that act will show that while the lines and limits of the avenues and streets which were laid out under it, were made permanent, the grades were left for future regulation.

With these views we are of opinion that the order made at the special term should be reversed, and the injunction dissolved.

