## SUPREME COURT.

THE PEOPLE *ex rel.* MICAH BALDWIN agt. THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY.

It is the duty of boards of supervisors " to examine, settle and allow all accounts chargeable against their respective counties." And the proper discharge of this duty involves the exercise of *judicial functions*—the receiving of evidence, the hearing, considering and determining in respect to the justice and legality of each and every claim presented for allowance.

Where the relator as marshal, appointed under the act of March 12, 1855, and the supplemental act of April 6, 1855, to take the census, presented to the board of supervisors of Livington county his account against the county for fifty-nine days' services as such marshal, at $2 per day, and the board audited and allowed his account for forty days' services at $2 per day,

*Held,* it appearing that the marshal, under said acts, was entitled to receive $2 for each day he was *actually* and *necessarily employed,* to be audited and allowed, &c., and no directions in the acts as to how the accounts should be made out; that his claim stood upon the same footing with all other accounts against the county; and the board, having ascertained, found and determined

that he was not *actually* and *necessarily employed* fifty-nine days, but only forty days, the decision was a judicial determination, of which it was not the office of a *mandamus* to bring up for review.

*Livingston Special Term, Feb.,* 1856.

MANDAMUS.

THE relator in this proceeding was duly appointed under the act of March 12, 1855, a marshal to take the census in and for the town of Lima, in said county of Livingston; and for the service rendered under the supplemental act, passed April 6, 1855, became entitled to be paid the sum of two dollars per day for the time actually expended.

The writ of mandamus states, that he was actually and necessarily employed in the discharge of his duties, as such marshal, in taking the census and enumeration of the inhabitants of the said town of Lima, fifty-nine days; and that he presented his account, made out and verified as required by law, for the services so rendered, to the board of supervisors of said county, that the same might be audited, allowed, assessed and collected, pursuant to the provisions of the aforesaid mentioned act; and that the said board of supervisors had refused to audit and allow said account.

To the alternative writ of mandamus allowed in the cause, the board of supervisors returned: That the said relator duly presented to the said board his claim of fifty-nine days' service, under the act, as marshal of the said town of Lima; that the said board, pursuant to the statute, did proceed to examine, settle and allow said account; and did examine, settle, audit and allow the same; that upon such examination and settlement, the said board ascertained and believed, found and determined, that the said relator was not actually and necessarily employed as such marshal, under and by virtue of said act, fifty-nine days; and in like manner ascertained and believed, found and determined, that the said relator was not so employed over forty days; and thereupon said board of supervisors audited and allowed said account of said relator at the sum of eighty dollars, pursuant to the statute and their power and duties in that behalf; and said board of supervisors

say that they have not refused to audit and allow the account of the said relator for the services rendered by him, as such marshal aforesaid.

Upon the writs of mandamus and returns, in this and twelve other like cases, counsel for the relator moved for writs of peremptory mandamus.

JAMES WOOD, JR., *for relators.*
SCOTT LORD, *for supervisors.*

E. DARWIN SMITH, Justice.   By the 13th section of the act providing for taking the census of March 12th, 1855, the accounts for the services of the marshal, performed under said act, were to be audited by the supervisors of the county where the services were performed, and assessed, collected and paid as part of the contingent expenses of the county ; and by the supplemental act of April 6th, each marshal was entitled to receive two dollars for each day he was *actually* and *necessarily employed,* to be audited and allowed as aforesaid.

Neither of these acts directs how the accounts of the marshal shall be made out, verified, or proved, and they are, therefore, necessarily governed by the general provisions of law regulating accounts presented to boards of supervisors in 1 *Rev. Stat. 4th ed.* 680, §§ 26 *and* 27.

The relator's claim stands upon the same footing with all other accounts against the county, required to be audited by the board of supervisors, which may be allowed in whole or in part, or disallowed, notwithstanding the verification thereof.

It is the duty of boards of supervisors "to examine, settle and allow all accounts chargeable against their respective counties."

The proper discharge of this duty involves the exercise of judicial functions, the receiving of evidence, the hearing, considering and determining in respect to the justice and legality of each and every claim presented for allowance.   The relator presented to the respondents a claim against the county of Livingston for fifty-nine days' services.   He was entitled to be

be paid two dollars per day "for each day he was *actually* and *necessarily employed.*" How many days he actually and necessarily spent in the discharge of his duties as marshal was a question which the respondents were necessarily called upon to ascertain, determine and decide, before they could legally pay his account. When that question was decided, the law fixed the amount of his compensation at two dollars per day for each day's service.

The duty to "examine, settle and allow" his account was practically discharged when they had ascertained and determined the number of days he was *actually* and *necessarily employed*, and could not be properly performed without examining and considering that point.

The respondents say, in their return, that they did proceed to examine, settle and allow the relator's account; that, upon such examination and settlement, they ascertained, believed, found and determined, that the relator was not *actually* and *necessarily employed* as such marshal fifty-nine days, but was so employed forty days, and no more; and that they had audited and allowed his account at eighty dollars. This is in the nature of a judicial determination.

Such determinations of inferior officers, or of subordinate tribunals, it is not the office of the writ of mandamus to bring up for review in this court. If the respondents had refused to examine, audit and allow said account, this court, by the writ of mandamus, would require them to do so. But the respondents have not refused to audit the account: they have only exercised their discretion as to the extent of the allowance, not in regard to the rate of compensation, but in regard to the time for which the county should be charged. In such cases a mandamus will not lie. (*The People* agt. *The Supervisors of New-York*, 1 *Hill*, 367; *The People* agt. *The Supervisors of Albany*, 12 *John.* 414; *Hull* agt. *The Supervisors of Oneida*, 19 *id.* 259; *People* agt. *Supervisors of Dutchess*, 9 *Wend.* 508.)

If the supervisors have erroneously disallowed the nineteen days, the relator can have no relief by mandamus. This court is not so destitute of business that it will be likely soon, if ever,

to attempt drawing to itself the work of investigating the accounts and claims presented to the various boards of supervisors in the state, that it may review their numerous decisions and adjudications on such claims.

The motion for peremptory writs of mandamus in these cases is denied, with leave to the relator to plead to the returns, or demur.