## SUPREME COURT.

THE PEOPLE *ex rel.* NATHAN C. PLATT agt. ANDREW V. STOUT.

Where the right to *remove* a public officer is vested by legislative or constitutional
enactment in a particular person or body, *for cause*, or upon notice to the incum-
bent, and no right of appeal or review has been expressly given by law, this
court has no power or authority to inquire into the discretion exercised by such
person or body, or in any manner to review such removal,

Therefore, the authority of removal of the *chamberlain* of the city of New York,
being, by the charter conferred upon the mayor and a majority of the board of
aldermen, the exercise of this authority is of a *discretionary* or *judicial* nature,
and is not the subject of *examination* or *review* by any other tribunal, either in
respect *to the cause,* or its sufficiency, or existence, or in *any respect whatever.*

*New York General Term, June,* 1860.

SUTHERLAND, LEONARD *and* BOCKES, *Justices.*

APPEAL from judgment at special term sustaining (*pro
forma*) the right of the defendant to the office of chamber-
lain of the city of New York.

D. DUDLEY FIELD, *for relator.*

WM. CURTIS NOYES, WM. M. EVARTS *and* JAS. T. BRADY,
*for defendant.*

By the court—LEONARD, Justice. This is an action in
the nature of a *quo warranto,* to oust and exclude Mr. Stout
from the office of chamberlain of the city of New York,
which, it is alleged he withholds, after removal by lawful
authority, from Mr. Platt, who has been legally appointed,
and has duly qualified.

The cause assigned for the removal of Mr. Stout was,
that he had refused to pay interest on the funds of the
city, in his hands by virtue of his office. The mode of
removal was by the mayor, with the consent of a majority
of the board of aldermen.

Mr. Stout insists that he was not required to pay inte-
rest by the ordinances; that he was never notified of any

charge against him in his official capacity; that no oppor-
tunity was afforded him to be heard in his defence; and
that his removal was, in fact, without any legal cause, and
is for these reasons wholly ineffectual for the purpose
intended.

These questions came up on demurrer to the defendant's
answer, and the pleadings are so arranged that every alle-
gation of fact on either side is admitted.

The right of removal, except for legal and sufficient
cause, whether such cause, in fact, existed at the time of
the removal and was assigned therefor, and the authority
of the court to examine into or consider the manner in
which the power of removal by the mayor and aldermen
has been exercised, are questions that have been argued
before us with great learning and ability, and which we
are now to decide.

We have given to this case all the time and examination
which the brief interval since the argument, and other
daily engagements have permitted, and we are now pre-
pared to announce our decision, as we think correctly; we
shall, however, necessarily omit any extended discussion
or review of the subject.

The city charter, passed in 1857, provides (§ 19,) that
the heads of departments shall be appointed by the mayor,
with the advice and consent of the board of aldermen.
Section 21 provides, that the mayor shall have the power
to suspend, for cause, during any recess of the common
council, and by and with the consent of the board of alder-
men, to remove any of the heads of departments, except
the comptroller and counsel to the corporation.   *   *   *
That the board of aldermen shall have power, without the
consent of the mayor, by a vote of two-thirds of all the
members elected, to remove any of the heads of depart-
ments, for cause, except the comptroller and counsel to the
corporation.   *   *   *   That the chamberlain shall be
appointed by the mayor, with the consent of the board of

aldermen, *and may be removed in the same manner with the heads of departments.*

Referring to the debates in the conventions which framed the constitutions of 1821 and of 1846, we find that where the power of removal has been conferred, for causes to be publicly assigned by those in whom the power has been vested, that the responsibility to the people, it was considered would be a sufficient guard against an improper exercise of this power. It appears not to have been contemplated that any review should be had of its exercise.

We have examined, with considerable care, to find any adjudicated case where the courts have exercised the power to review the removal of an officer in a case where the right to remove was vested, by legislative or constitutional enactment, in a particular person or body, for cause or upon notice to the incumbent, but have been unable to meet with such a case.

The mayor and the board of aldermen were not acting in a ministerial capacity in performing the act here complained of.

The cases are numerous which hold that where a discretion is vested in any inferior jurisdiction, and that discretion has been exercised, a *mandamus* will not be granted, because the court cannot control, and ought not to coerce, that discretion.

The application of the principles, decided in analogous cases arising on *mandamus*, are, as I conceive, in point here. The remedy by *mandamus* is not the proper one here, because Mr. Stout is now in office by color of right, (*The People* agt. *The Corporation of New York*, 3 *Johns. Cases*, 79 ;) but that does not afford any reason why the principles decided in cases arising on *mandamus* are not good as authority in actions of *quo warranto*, if analogous. *People* agt. *The Supervisors*, (12 *How. Pr. R.*, 204.) The supervisors were authorised by law "to examine, settle, and allow, all accounts against their respective counties."

They disallowed a part of the demand of the relator (who was a marshal for taking the census,) after having audited the account.

The court held, that the law conferred on the supervisors the exercise of judicial functions, and that it was not reviewable by *mandamus*. *The People ex rel. Ch. A. Peabody* agt. *The Attorney General*, (13 *How. Pr. R.*, 179.) The Code, (§ 432,) makes it the duty of the attorney general to determine whether, in any particular case, it is proper that an action should be brought to try the right of any claimant to an office. The court refused a *mandamus*, because the exercise of discretion, under that section, by the attorney general was, in its nature, a judicial act, from which there was no appeal, and over which courts have no control. ( *Waddell* agt. *The Mayor, &c.*, 8 *Barb. S. C. R.*, 95 ) The charter of the city of New York authorized the common council to alter or amend the grade of the streets. It was decided that it was not the province of the supreme court to review the judgment of the common council, or examine into their motives.

*Ex parte Johnson*, (3 *Cowen's R.*, 381.) This was an application to the county court to remove a justice of the peace for making a false return to a certiorari, and for keeping his office in a grog shop. The authority to remove justices of the peace was vested by the constitution in the county court for causes to be particularly assigned by the judges of that court, and after notice to the party complained of, and an opportunity of being heard in his defence.

The county court denied the application without reference to the merits, and in substance refused to consider the subject at all.

An application was made to the supreme court for a *mandamus* to compel the county court to take cognizance of the matter.

The supreme court decided that the county court held

a constitutional power, with which they would not interfere. That the county court were the sole judges whether they would notice the charges or not.

*The Judges of the Oneida Common Pleas* agt. *The People, &c.*, (18 *Wen. R.*) The court of common pleas certified that the title to land came in question on the trial of a cause which carried costs against the defendant although the recovery was under fifty dollars. The defendant in that action applied to the supreme court for a *mandamus*, directing the common pleas to vacate the order granting costs. The supreme court examined the facts, and declared that the title to land did not come in question, and awarded the *mandamus*. The question was carried before the late court of errors.

The facts were so clear that it seemed indisputable that the common pleas had shown an arbitrary partiality. The court of errors decided unanimously (22 members present,) that the granting or withholding of the certificate was in the discretion of the common pleas, the authority being conferred on them by statute so to do, and that the supreme court had no jurisdiction to review the decision of the court below, certifying that the title to land came in question on the trial. This was a case where the certificate was wholly unfounded in fact. Numerous other cases are referred to, in the various authorities above cited, and also in the authorities referred to on the points of counsel for the appellants, establishing conclusively that where a particular discretion, or authority of a judicial nature has been conferred on an inferior jurisdiction by statute, the exercise of that authority cannot be reviewed in any respect, and the judgment which such jurisdiction may render is conclusive, unless the right of appeal or review has been expressly given by law.

The authorities cited from English reports, by the counsel for the respondent, have also been carefully examined, and without here reviewing them in detail, it is suffi-

cient to say that the authority to remove officers by the
various corporations by which the power was exercised
was derived from custom, prescription, or as an incidental
power, and, in many instances, where the incumbent had a
freehold interest in the office.   The existence of the right
to make the removal at all, was in many cases a fact neces-
sary to be ascertained, and if the right existed, then, in
many cases, to ascertain whether it had been exercised in
accordance with the custom.

Where the right has been so derived, the question
involved is obviously one of fact, and the exercise of the
right of removal was a ministerial power, and therefore
subject to judicial review in the courts, where issues for
trial can be framed, and evidence produced and examined.

From our examination of the case, without further refer-
ence to the language of the section of the statute from
which the power of removal in this case is derived, we hold
that the authority of removal is conferred by law upon the
mayor and a majority of the board of aldermen, and that
the exercise of this authority is of a discretionary or judi-
cial nature, and is not the subject of examination or review
by any other tribunal, either in respect to the cause, or
its sufficiency, or existence, or in any respect whatever.

There must be some termination to the exercise of dis-
cretion; and it does not appear, as a principle, to be an
unreasonable or extraordinary thing for the legislature to
have conferred such discretion upon the mayor and a
majority of the board of aldermen.

If the courts are to control the exercise of the power
of removal in such case, then the removal is not by the
mayor with the consent of a majority of the board of
aldermen, but the consent of the judges of the supreme
court must also be obtained, where the parties interested
choose to invoke the action of the court.

We have also been referred to an act of the legislature,
passed April 7th, 1860, directing the deposit of the public

moneys by the chamberlain, and, as we think, limiting the period of the termination of his office, but not affecting the tenure of it, except in case the power of removal shall not have been exercised. The power of removal remains unaffected by the act.

The judgment of the special term, upholding the right of the defendant to the office of chamberlain, must be reversed, and judgment must be entered for the plaintiffs according to the prayer of the complaint.

SUTHERLAND, Justice. This is an action in the nature of *quo warranto*, in which the plaintiff, Mr. Platt, claims that he is entitled to the office of chamberlain of this city, that he ought to be put into it, that the defendant, Mr. Stout, is not entitled to it, and that he ought to be ousted. The complaint states various facts to show Mr. Platt's title to the office, and to show that Mr. Stout had been legally and duly removed from the office. The answer states various facts to show that Stout had not been legally removed. The plaintiff demurs to this answer.

The questions are as to the title of Mr. Platt to the office, his right to be put into it, and whether Mr. Stout has been legally and duly removed from it. It is conceded, and no question is made, that if Mr. Stout has been duly and legally removed, Mr. Platt has been duly and legally appointed. So that the only question in the case is as to the legality of the removal on the facts presented by the demurrer. Judgment *pro forma* at special term, was entered in favor of Mr. Stout on this demurrer. The court are unanimously of opinion that the judgment at special term for the defendant on the demurrer must be reversed, and that the plaintiff should have judgment on the demurrer, and that the said Platt is entitled to the said office, and that he be admitted to the same, and that the said defendant is not entitled to the same.

The grounds of this decision are briefly these: The main and important question is whether this court has any

jurisdiction over, or right to control the exercise of the power of removal vested by the 21st section of the charter of 1857 in the mayor and the board of aldermen, or in the board of aldermen, by a two-third vote of all the members elected; or whether the legislature by the charter intended to vest in the mayor and board of aldermen, or in the board of aldermen alone by a two-third vote, the *discretionary* power of removal? If the right and power of removal is discretionary, this court has no jurisdiction over, or right or power to control its exercise, except to see that it has been exercised in the form prescribed by the law creating and vesting the power. It may be laid down as a general proposition, abundantly supported by authority, and as the result of our political or governmental institutions, which operate by a delegation of political or governmental powers to various tribunals, officers and agents, that when the constitution, or the legislature by a law authorized by the constitution, vests a discretionary or judicial power in any particular inferior tribunal or officer; that this court has no other or further jurisdiction or control over the exercise of such power by such inferior tribunal or officer, than to see that such inferior tribunal or officer, on the occasion of its exercise, had jurisdiction over the subject matter of its exercise—that is, that the occasion or circumstances contemplated by the constitution or the act for its exercise had occurred—and that the power has been exercised in the form prescribed by the constitution or the act.

The case *ex parte Johnson*, (3 *Cowen*, 371,) may be referred to, to illustrate what we mean. In that case, by the constitution of 1821, the county court had power to remove any justice of the peace for cause to be assigned by said court, such justice having a copy of the charges served upon him and an opportunity to answer. One P. B. Johnson presented a verified petition to the county court, stating that a certain justice of the peace, had made a false return to a certiorari, willfully and knowingly, and also held his

court in a grog-shop or a drinking shop, an improper place, and asked for the removal of the justice. The county court refused to consider the question, and an application was made to the supreme court for a *mandamus*, and the court say that the constitution vests in the county court discretionary power over the whole subject, and had made them the sole judges, whether they should listen to the charges preferred. The court say we will not interfere in any manner; we have no right to interfere. A case, not cited I believe, by either of the counsel on the argument, *Commonwealth*, agt. *Pike Beneficial Society*, (8 *Watts & Sergeant's Pennsylvania Reports*, 247,) may be referred to as explaining the grounds upon which we rest our decision.

Now, whether any power not thus expressly given by the constitution or by the legislature, but judicially inferred or determined as existing, as a mere incident of the powers expressly conferred, can be called or considered a discretionary power we are not called upon to decide. The power granted here is express. The cases cited by the counsel for the defendant, are most of them cases where this power has been inferred. No case has been cited to show that such a power expressly given, was not discretionary. Now with regard to this incidental power, we make this suggestion : Would the courts ever infer or imply a power which they could not direct or control ? The very fact that the courts would imply the power, would appear to imply that they would and must direct it. Will the court imply discretionary power not subject to its direction and control?

Now, the question in this case arises on the 21st section of the charter of 1857. If I understand my associates, and I believe I do upon this point, we think it is not necessary to pass upon the question whether the words " for cause " in the section granting the power to the mayor to suspend, and with the consent of the board of aldermen to remove, qualify merely the power to suspend,

or qualify also, the power to remove. Concede that they so qualify the whole, so that it shall read, " that the mayor shall have power to suspend for cause, and by and with the consent of the board of aldermen to remove for cause ;" concede that to be the language, the cause not being defined or designated, by the statute, the whole subject is left to the discretion of the mayor and the board of alder-men, except in this, that we are judicially to determine whether the board of aldermen have consented ; that, of course, is a judicial question. Perhaps we may say the exercise of the power is, so far, the subject of judicial review, as that a cause or some cause must or should be assigned for the exercise of the power. We might go so far as to say.that this court should see that they assign a cause. But in this case, we have no control, nor can we adjudicate upon the sufficiency or goodness of the cause, because the statute does not designate any cause, and there is no standard, or rule, or definition, by or according to which one can determine the assigned cause to be good or sufficient. The construction which would give us the power to judge the goodness or sufficiency of the cause assigned, in the absence of any specification by the legis-lature, would virtually give to this court the power of removal, and the legislature will have committed it in effect, not to the mayor and aldermen, but to the supreme court. A discretionary power which can be controlled by the court is virtually given to the court, because the parties interested may always resort to the court. If this statute had said that the mayor and the board of alder-men might remove for dereliction of official duty, then they could adjudicate upon the question whether the cham-berlain was removed for that cause. We may even go so far as to say, if the law had been that he should continue in office during good behavior, and should be removed for misbehavior, that it must be a question whether the remo-val was for misbehavior within the meaning of the act.

People agt. Stout.

But this statute says for cause, without the designation or specification of any cause whatever. The result must be that the legislature intended by the act to give, so far as it regards the sufficiency, or goodness, or reasonableness of the cause, the whole discretionary power to the mayor and board of aldermen, or to the board of aldermen acting by a two-third vote, to determine and adjudicate for themselves on those subjects, in view of their responsibility to the public. The question whether the board of aldermen did in fact consent to the removal of the defendant is properly before us, and is one which we have a right to determine? That depends upon the question raised in the case, whether the board of aldermen, subsequent to the abdication of the chair by Mr. Boole, was properly in session so as to pass the resolution? That applies only to the meeting of the 14th of May, when the resolution was first passed. The court are of opinion that this abdication of the chair by Mr. Boole did not deprive the board of aldermen of the right to appoint another chairman. It is hardly necessary to decide even that, because afterwards, on the 31st of May, the board did pass a resolution referring to the action of the 14th of May, and to the doubts which had arisen as to whether the board had then been properly organized, and reaffirming the resolution, and concurring in the removal of Mr. Stout and the appointment of Mr. Platt.

The result is that the judgment must be reversed, as I have stated.

Justice BOCKES concurred.

NOTE.—While this case was pending for argument in the court of appeals at the present June term, and before it was reached on the calendar, Mr. Stout withdrew and relinquished, in a public card, any further prosecution of the case, whereupon Mr. Field, counsel for Mr. Platt, considered that under the stipulation entered into by him with the counsel for Mr. Stout, that an immediate argument of the case should be had in the court of appeals, he was bound to take judgment by default in that court, which was accordingly done.—REP.