# SEXTUS N. WILCOX *et al.*

*v.*

# THE PEOPLE *ex rel.* Clark Lipe *et al.*

1.  PARK COMMISSIONERS—*are public officers.* The West Chicago Park Commissioners are "officers," within the meaning of the 10th, 11th and 12th sections of the 5th article of the constitution of 1870, providing for the appointment and removal of officers by the Governor. Those commissioners are not merely minor municipal or corporate officers, but they are agents, by whom, in part, the people of the State carry on the government. Their functions are essentially political, and concern the State at large, although such functions are to be discharged within the town of West Chicago.

2.  OFFICE AND OFFICERS — *appointment by the Governor.* Under section 10, article 5, of the constitution of 1870, there may be two modes of appointment to office by the Governor,—one by and with the advice and consent of the Senate, and the other by the sole and independent act of the Governor, without the consent of the Senate. Under this section, it is competent for the legislature, by law, to create an office, and provide for the appointment of the officer without the assent of the Senate.

3.  SAME—*Governor's power, under the constitution, to remove officers appointed by him.* Under section 12, article 5, of the constitution, the power of the Governor to remove officers appointed by him, for incompetency, neglect of duty, or malfeasance in office, and fill the vacancy caused thereby, is not confined to officers appointed by and with the advice and consent of the Senate, but it extends to all officers appointed by the Governor, under the law, whether with or without the concurrence of the Senate.

4.  The substantive, principal thing of section 12, article 5, of the constitution, is, the power of removal from office contained in the first clause, and what follows in the last clause, as to filling vacancies, is incidental and subordinate. Under the rules of construction, therefore, the last clause should not be held to control and govern the first, but should yield to and be made to conform to the first.

5.  The intention of the constitution of 1870 was to make the power of removal from office by the Governor co-extensive with his power of appointment.

6.  SAME — *Governor may remove officers appointed under special acts passed before the adoption of the constitution.* The power of removal from office given by the constitution of 1870 to the Governor, applies to officers appointed by him under special and particular laws passed prior to the adoption of the constitution, as well as to those appointed under subsequent laws.

7. SAME—*the Park act of* 1869 *is superseded by the constitution of* 1870 *in respect to the grounds of removal—and by whom.* The provision of the constitution, giving the Governor the power to remove any officer appointed by him, for *incompetency*, neglect of duty or malfeasance in office, is not consistent with that part of the West Park act of 1869 which provides for the removal of the commissioners by the circuit court, and only for misdemeanor or malfeasance in office, and, therefore, the provisions of the constitution, as to the power of removal, must prevail. It is no longer consistent, under the constitution, that any appointee of the Governor shall hold his office without being subject to removal by him for incompetency.

8. The constitutional provision for removal from office is a cumulative remedy, to be exercised by the Governor, applicable alike to all his appointees, whether other specific remedies had been provided or not.

9. SAME—*mode of removal by the Governor.* The constitution giving the Governor power to remove from office any officer appointed by him, for incompetency, etc., being silent as to the mode of its exercise, it follows that the Governor may determine whether any of the causes exist for removal from the best lights he can get, and adopt such mode of procedure as he may deem proper and right, and it is not for the courts to dictate to him in what manner he shall perform the duty. No written charge, notice or formal trial is necessary.

10. STATUTE *subject to amendment without vote of people.* An act of the legislature, depending for its validity upon a vote of adoption by the people, such as the West Chicago Park act of 1869, may be amended by subsequent legislation, or by constitutional enactment, without any vote of the people. It was competent, by the constitution, to superadd an additional cause for removal from office, and give the executive of the State the right to exercise the power.

11. CONSTITUTION—*rule of interpretation.* Constitutions are not to be interpreted according to the words used in particular clauses. The whole must be considered with a view to ascertain the sense in which the words were employed, and its terms must be taken in their ordinary acceptation, because they are presumed to have been so understood by the framers, and by the people who adopted it.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. W. K. MCALLISTER, Judge, presiding.

Messrs. HAY, GREENE & LITTLER, and Mr. GEO. W. SMITH, for the plaintiffs in error.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. C. C. BONNEY, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a proceeding by information in the nature of a *quo warranto,* in the Criminal Court of Cook county, to try the title of the defendants to the office of West Chicago Park Commissioners.

On the 10th day of October, 1877, the Governor removed the relators from such office for incompetency, and on the next day appointed the defendants to succeed them.

The court below sustained a demurrer to defendants' rejoinders to relators' replications, and rendered judgment of ouster against the defendants. The relators sued out this writ of error for the reversal of the judgment.

It is sufficient to say, without setting out in detail the pleadings, that the question presented by the record is, the right of the Governor of this State to remove from office a member of the Board of West Chicago Park Commissioners.

The case presents for construction the 10th, 11th and 12th sections of the 5th article of the Constitution of 1870. They are as follows:

"§ 10. The Governor shall nominate, and by and with the advice and consent of the Senate, (a majority of all the Senators elected concurring by yeas and nays,) appoint all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for; and no such officer shall be appointed or elected by the General Assembly."

"§ 11. In case of a vacancy during the recess of the Senate, in any office which is not elective, the Governor shall make a temporary appointment until the next meeting of the Senate, when he shall nominate some person to fill such office ; and any person so nominated, who is confirmed by the Senate (a majority of all the Senators elected concurring by yeas and nays), shall hold his office during the remainder of the term," etc.

" § 12. The Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office, and he may declare his office vacant, and fill the same as is herein provided in other cases of vacancy."

Two questions are presented, depending upon the construction of the foregoing provisions. The first is : Do the members of the Board of the West Chicago Park Commissioners come within the foregoing constitutional provisions, so as to be removable by the Governor by virtue of such provisions?

The second is : If they do fall under these provisions, and are therefore removable by the Governor, can they be so removed without charges, without notice, and without opportunity of defense ?

The act incorporating the West Chicago Park Commissioners, approved February 27, 1869, provides that, " seven persons, resident freeholders and qualified voters of said town (of West Chicago,) who shall be designated by the Governor of the State of Illinois, together with their successors, shall be and they are hereby constituted a board of public park commissioners for the town of West Chicago, to be known under the name of the West Chicago Park Commissioners."

The board is made a body politic and corporate, and among the powers given it are, to govern, manage and direct all parks authorized by the act ; to lay out, regulate, make and improve the same, to pass ordinances for the government of the same, to levy special assessments on all property by them deemed to be benefited, to appoint a police force, etc., and generally, in regard to the parks, to possess all the power then possessed by the common council of the city of Chicago in respect to the public squares, places and streets in said city ; to accept the service of such of the police force of the city of Chicago as might be placed at their disposal; to acquire by condemnation, or otherwise, the title in trust, etc., as public promenade and pleasure grounds, the lands required, the

total cost of the parks to be assessed on the property benefited; to forbid any horse-racing, gambling or obnoxious business or amusements within 400 feet of the park; to borrow moneys and pledge the credit of the town of West Chicago for the repayment of the same.

Upon the organization of the board, the members were to decide, by lot, as to their respective terms of office, the person drawing the longest term to serve seven years from March 1, 1869, and so on down, the last of the commissioners serving for the term of one year from that time. All vacancies occurring in the board were to be filled as soon as might be thereafter, by the appointment of the Governor.

Section 18 of the act provides, that the commissioners or either of them, may be removed from office by the circuit court of Cook county after trial and conviction, upon the petition, with sworn charges presented by not less than ten reputable freeholders of the town of West Chicago, for any misdemeanor or malfeasance in office. It further provides, that upon such judgment of removal for such cause, the clerk of the court shall certify a copy of the final judgment to the Governor. Then follows a provision that the president and secretary of the board shall certify to the Governor all other vacancies arising or occurring in the same after the organization thereof.

It is contended, on the part of the relators, that the West Chicago Park Commissioners are not officers, in any proper sense of that word, but that they are mere trustees, created a corporation by the legislature for the purpose of taking and holding the title for public use of certain lands to be acquired as a park, and for the purpose, as such trustees, of improving and controlling said lands, deriving their means from taxes imposed by the town of West Chicago; that they are *quasi* corporate authorities, belonging to the municipality of West Chicago, and not to either of the three departments of government created by the constitution, which latter is the sense in which this court has held the term "officers" was used

in the corresponding sections of the constitution of 1848, citing the case of *Bunn* v. *The People*, 45 Ill. 401.

The question in that case was, whether the State House Commissioners named by the act of 1867, providing for the erection of a new State House, were "officers" in the sense of the constitution; if they were so, then the constitution of 1848 forbade their appointment by the legislature. It was there said: "Therefore, when the constitution says that no office established by that instrument, or created by law, shall be filled by appointment or election of the General Assembly, the framers of it had direct and immediate reference and application only to such offices as were created for the purpose of administering the three departments of government organized by it." This is relied on, and it is asserted that these commissioners did not belong to either one of the three departments of government. Further on, in the same case, it was said: "It seems to us the term, 'such officer,' judging from the contemporaneous action and construction of the clause by the legislature, had reference alone to such officers as had some portion of the functions of government committed to their charge." It is manifest, upon the survey of the powers granted to this board, that some portion of the functions of government was committed to their charge, as, the power to pass ordinances for the government of the park; to levy special assessments; to appoint a police force; to have generally, in regard to the park, all the power then possessed by the common council of the city of Chicago in respect to public squares, places and streets in said city; to have power to forbid horse-racing, gambling or obnoxious business or amusements within a certain distance of the park, etc., etc. In *City of Chicago* v. *Wright*, 69 Ill. 318, it was said: "The heads of the police department of Chicago are not mere municipal officers, whose functions relate exclusively to that particular municipality, but they are State officers—that is, officers whose duties concern the State at large, or the general public, although exercised within defined territorial limits. The ad-

ministration of justice, the preservation of the public peace and the like, although confided to local agencies, are essentially matters of public concern," citing Dillon Mun. Corp. § 33. The constitution of 1870 defines an office thus: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. An employment is an agency for a temporary purpose, which ceases when that purpose is accomplished." Art. 5, sec. 24.

The members of the Board of West Chicago Park Commissioners are agents, by whom, in part, the people of the State carry on the government. Their functions are essentially political, and concern the State at large, although they are to be discharged within the town of West Chicago. By the decisions of this court, this board of park commissioners is held to be a *quasi* municipal corporation, a "corporate authority" in whom it was competent for the legislature to vest the power to assess and collect taxes within the park district created. And whether tested by the decision in the *Bunn case*, or by the constitutional definition, we can not doubt that these park commissioners come fully within the term "officers."

But the point more strenuously urged is, that even if these commissioners are to be regarded as officers in any sense, they are merely minor municipal or corporate officers, and not such officers as the three sections named of the constitution under consideration, had in view.

It is claimed by the relators, that under section 10 of the constitution, that "the Governor shall nominate, and by and with the advice and consent of the Senate appoint, all officers whose offices are established by this constitution, or which may be created by law, and whose appointment or election is not otherwise provided for," there may be two modes of appointment by the Governor, one with the advice and consent of the Senate, the other, by the sole, independent act of the Governor, without the consent of the Senate. That the section provides

that the Governor shall appoint by the particular mode of nominating to, and obtaining the consent of the Senate, all officers whose offices are established by the constitution or which may be created by law, and whose appointment or election is not otherwise provided for; and that under this section it is competent for the legislature to create, by law, offices and provide for the appointment of the officers by the Governor without the assent of the Senate; that it is only over the former class of officers, those appointed with the concurrence of the Senate, that the power of removal is given. That these park commissioners are not of this class, but of the other class "otherwise provided for," to-wit, by appointment by the Governor alone, without the concurrence of the Senate, by the West Park act of 1869. That in the 11th section, that "in case of a vacancy during the recess of the Senate, in *any office which is not elective,* the Governor shall make a temporary appointment until the next meeting of the Senate," etc., if we take the words, "in any office which is not elective," literally, it would include every office filled by appointment in the State, which manifestly is not the meaning; but that the intention was to include only those appointed by the Governor with the concurrence of the Senate, as contemplated by the 10th section. So it is said, that in the 12th section, that "the Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office, and he may declare his office vacant, and fill the same as provided in other cases of vacancy," the words, "any officer whom he may appoint," as in case of the 11th section, are not to be taken literally, but that they mean officers only of that class whom the Governor appoints with the concurrence of the Senate, and hence do not include these park commissioners who are appointed without such concurrence; and that the last clause manifests this, declaring the vacancy may be filled as herein provided in other cases of vacancy, such provision being for filling vacancies in offices where the appointment is with the concurrence of the Senate,

and in such case only; that this last clause clearly refers to the provisions of the next preceding—the 11th section—and the first class of officers contemplated by the 10th section.

In answer to this view, the first position taken by the other side is, that under the constitution, there may be but one mode of appointment by the Governor, namely, "with the advice and consent of the Senate;" and that where any law passed by the legislature gives him authority to appoint simply, it must be held to confer authority to appoint only with the concurrence of the Senate; that the 10th section, properly construed, was intended not only to confer the exclusive power of appointment upon the Governor in certain cases, but to fix a qualification to the exercise of his power of appointment in all cases where the legislature might confer the power upon him, to-wit, that it should be with the advice and consent of the Senate; that such a construction harmonizes the three sections, and the 12th section, giving the power of removal, would not then be open to construction. But it is insisted, that if this construction of the 10th section be not correct, that then the 12th section is open to construction, and that putting aside this interpretation, and adopting the view of the relators, in respect to section 10, of two modes of appointment being contemplated by it, one with and the other without the concurrence of the Senate, that then, the case is with the plaintiffs in error, upon the resort to construction of section 12.

Agreeing with plaintiffs in error in the latter view, it will not be necessary to consider the first position, and without passing upon it we will assume, for the purpose of the present decision, the theory of the relators as to the two modes of appointment by the Governor, under section 12. The occasion for construction which there is in respect of section 12, arises upon the last clause as to filling the vacancy in case of removal.

The whole section is: "The Governor shall have power to remove any officer whom he may appoint, in case of incompe-

tency, neglect of duty, or malfeasance in office, and he may declare his office vacant, and fill the same as is herein provided in other cases of vacancy."

The other cases of vacancy "herein" provided for are, where the Governor appoints with the concurrence of the Senate, and in such cases only. There being two classes of officers, as assumed, the subject of appointment and removal by the Governor, one appointed with, and the other without the concurrence of the Senate, the provision for the filling of vacancies would meet the case of the first class only, and that of the second, not at all. The provision for the filling of vacancies would not be co-extensive with the power of removal. What, then, would be the result? It would be that the section had failed to make any express provision as to the filling of the vacancy caused by the removal of an officer whom the Governor alone might appoint, and would leave the vacancy to be filled by the appointing power who filled the office originally. We do not see that any express provision upon that subject was necessary. But with the other class of officers, to whose appointment the consent of the Senate was required, it was necessary that there should be some provision made for filling the vacancy, where the removal was made during the recess of the Senate, and this provision is made.

The language of the section in the first clause is comprehensive and general, that the Governor shall have power to remove any officer whom he may appoint; but relators claim that this is too broad, that the letter does not disclose the true meaning; that the first clause is to be limited by the language in the last clause; and that the latter clause indicates that the power of removal was only intended to be applied to officers whom the Governor was to appoint by the advice and consent of the Senate. It is assumed that an ellipsis is necessary to be somewhere supplied in the section to give it its true meaning, and the relators would supply the words to the first clause, so as to make it read, "The Governor shall have power to remove any officer whom he may appoint *by the advice and con-*

*sent of the Senate,* in case of incompetency," etc. The plaintiffs in error claim that if words are to be somewhere supplied to give the true meaning, they should be in the last clause, so as to make it read "and he may declare his office vacant, and *if the officer removed was appointed by the advice and consent of the Senate,* fill the same as herein provided in other cases." Of these two readings of the section, we think that of the plaintiffs in error best agrees with the natural sense of the language employed, with reason, with the true intent, and the canons of interpretation.

As touching the rules of interpretation bearing upon the subject, "Constitutions are not to be interpreted according to the words used in particular clauses. The whole must be considered with a view to ascertain the sense in which the words were employed, and its terms must be taken in their ordinary and common acceptation, because they are presumed to have been so understood by the framers, and by the people who adopted it. This is, unquestionably, the correct rule of interpretation. It, unlike the acts of our legislature, owes its whole force and authority to its ratification by the people, and they judged of it by the meaning apparent on its face, according to the general use of the words employed, when they do not appear to have been used in a legal or technical sense." *Manly* v. *State of Maryland,* 7 Md. 135; see p. 147.

The following are taken from Domat's and Lieber's rules for the construction and interpretation of laws collected in Sedgw. Const. of Stat. and Const. Law, 244, 248:

Domat, sec. 11. "If in any law we find the omission of something essential to it, or which is a necessary result of its provisions, and requisite to give the law its full effect, we may supply what is wanting, but not expressed, and extend the law to what it was manifestly intended to embrace, but in its terms does not include."

Lieber's Hermeneutics, 120, 172. 4th. "The particular and inferior can not defeat the general and superior."

10th. "The effects which would result from one or the other construction may guide us in deciding which construction we ought to adopt."

14th. "If two laws conflict with each other, that must yield the effect of which is less important; or that is to be adopted, by the adoption of which we approach nearest to the probable or general intention of the legislator."

Evidently, the substantive, principal thing of the section is contained in the first clause of it—the power of removal from office; and what follows in the last clause as to filling vacancies, is incidental and subordinate. The last clause then, under the rules above, should not be held to control and govern the first, but should yield to and be made to conform with the first. The power given is general "to remove any officer whom he may appoint." How can it be supposed that it was the intention to discriminate as to officers, and to confine the power thus generally given to a class of officers only? The reason and necessity for the exercise of the power of removal apply equally as to all appointees. But if there is to be a discrimination between the two kinds of appointees, it would seem that it should be the reverse of the one which is claimed should be made here. There might be some sort of reason for giving the power to remove, where the officer was appointed by the Governor alone, and denying it where the appointment was with the concurrence of the Senate, on the supposed ground of the appointment being made less advisedly in the former case. But to reverse this, and withhold the power of removal where the officer was appointed by the Governor alone, and give it where he was appointed by the joint action of the Governor and Senate, where there would be a double safeguard for the fitness of the appointment, would seem simply absurd, and would admit of no reasonable explanation.

The plain reading of the provision is, that the Governor shall have power to remove any officer whom he may appoint, and in our opinion, no intent different from that can be derived from construction.

We think the intention was to adopt the rule which had become established under the Constitution of the United States with respect to appointments made by the President, but was denied in this State in the case of *Field* v. *The People*, 2 Scam. 79, arising under the constitution of 1818, namely, that the power of removal was incident to the power of appointment; and that the constitution of 1870 makes the power of removal from office by the Governor co-extensive with his power of appointment.

It is, besides, insisted upon by the relators, that this act of 1869, creating the office of West Park Commissioner, is a local special statute, amendatory and a part of the charter of the city of Chicago,—*Prescott* v. *City of Chicago*, 60 Ill. 121; that the statute points out a definite manner in which removals from the board of commissioners may be made, and designates a particular tribunal through which it may be done, viz: upon a petition, sworn charges, and after trial, the tribunal being the circuit court of Cook county, and that, though it be an affirmative statute, it is introductive of a new law and not declaratory of the common law, and that there is an implied prohibition against removal in any other manner than the one pointed out by the statute, under the rule that, "It is a maxim, generally true, that if an affirmative statute, which is introductive of a new law, direct a thing to be done *in a certain manner*, that thing shall not, even if there are no negative words, be done in any other manner." Potter's Dwarris, 72.

It is argued then, that this local special statute has not been repealed or abrogated in whole or part by the constitution of 1870, and that the manner pointed out in this statute still remains the only mode of removal from this office of West Park Commissioner.

These two rules are invoked, viz: 1. A general statute, without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. 2. A general law does not operate as a repeal

of a special law on the same subject, although passed at the same session. *Covington* v. *East St. Louis,* 78 Ill. 549. The principle of these rules, it is said, is just as applicable in determining the effect upon a special statute of a subsequent general affirmative constitutional provision, as in the case of a subsequent general statute, because a constitution, like a statute, is to be construed to operate prospectively only, unless its terms clearly imply that it should have a retrospective effect. Cooley's Const. Lim. 62.

The main ground of this position seems to be, that the constitution is prospective in its operation—that, as we understand, as to all officers, whose offices were created prior to the new constitution, the power of removal could not apply, because, as to them, the operation of the constitution would be retrospective, and that the power of removal could only be exercised where some new law passed since the adoption of the constitution of 1870, had created an office which the Governor might fill. Of course the West Park act passed in 1869, and the officers appointed under it, could not be singled out and be held as exempted from this provision of removal, for the reason of its not having retroactive effect, without applying the same rule to every other act and every other officer in existence when the new constitution was adopted, under which act the Governor exercised an appointing power. The State was, at the time this constitution took effect, supplied in full with very many officers of the Governor's appointment under laws which had been passed antecedently to the adoption of that instrument, as, notaries public, public administrators, penitentiary commissioners, commissioners of the various State institutions, railroad and warehouse commissioners, West Chicago park commissioners, and Lincoln park commissioners.

Is it to be said that not merely the incumbents of the offices, at the time of the adoption of the constitution, themselves, but that all these offices for all time, are not subject to the operation of this power of removal from office, because the constitution operates prospectively only, and that the provision applies

only to such offices as might be created in the future? The
proposition is wholly inadmissible. There is no reason for
such distinction, and it must strike every one as not being the
intent of the constitution. Any artificial rule of construction
which may be appealed to as being supposed to warrant such
a conclusion must be misapplied to this case.

The power of removal exercised in this case, was not for
causes prior to the adoption of the constitution, and the com-
missioners were all of appointments made subsequent to its
adoption, and hence, there was nothing retroactive in these
regards.

These relators accepted their offices in full view of the con-
stitutional provision in regard to the Governor's power of re-
moval.

The same result would follow as respects the ground of objec-
tion, as to a special local act not being abrogated by any general
provision of the constitution. There was not an office in ex-
istence at the time of the adoption of the constitution, created
by law, that had not been created under some particular and
special statute, having reference alone to some particular sub-
ject matter, and all more or less local in their character; and
if the constitutional provision is not to be applied to them
because it only provides a general rule, then the power of
removal is denied as to any officer at any time holding under
a law existing at the time the constitution took effect. The
reasonable application of this power of removal must be to
officers appointed under special and particular laws passed prior
to the adoption of the constitution.

The main intent and purpose of the provision, no doubt,
respected such officers, and offices under those laws.

But, this court has already decided against the position that
there is to be given to the constitution a prospective effect
only. *O'Connor* v. *Leddy*, 64 Ill. 299, *People* v. *Rumsey*, ib.
44, *Chance* v. *County of Marion*, ib. 66, *Hills* v. *City of Chi-
cago*, 60 id. 86, *People* v. *McRoberts*, 62 id. 38, and *Phillips* v.
*Quick*, 63 id. 445, are instances, among others, where prior

special statutes were decided to be abrogated or modified by general provisions of the constitution, they being held to operate *in præsenti*, with respect to such statutes.

The constitution makes one limitation of its application to existing offices, in providing that the then incumbents of office should continue in office until the expiration of their terms, and making no other limitation of its application to existing offices, indicates that none other was intended.

Stress is laid upon the first section of the schedule to the constitution, as saving the relators from executive removal, · viz: "That all laws in force at the adoption of this constitution *not inconsistent therewith*, and all *rights*, prosecutions, claims, and contracts of this State, individuals, or bodies corporate, shall continue to be as valid as if this constitution had not been adopted." It is said that there is no inconsistency or repugnance between these sections of the constitution, in ·question, and the provisions of the West Park act for a certain mode and tribunal for the removal of incumbents from office, and that, therefore, these provisions of that statute are preserved in full force by this section of the schedule, and continue so, leaving the particular manner of removal from office pointed out by the statute, the only mode.

The commissioners under the act of 1869 were to hold their allotted terms, subject only to removal on complaint to the circuit court of Cook county, for *misdemeanor or malfeasance* in office. Such was the tenure to the office when the constitution of 1870 took effect. By the terms of this constitution the Governor was to have power to remove whom he might appoint, for "incompetency."

Before, these commissioners were not removable for incompetency, either by the Governor or anybody else. Was there not, in this respect, incongruity between the law and the constitution—the commissioners by the law holding their offices free of the exercise of any such power by the Governor, but by the constitution, subject to it. It may be admitted that the entire provision of the act respecting removal was not

inconsistent with the constitution, and is not to be held abrogated on that ground and may stand in force in other respects.

But it was no longer consistent with the constitution that any appointee of the Governor should hold his office without being subject to removal by him for incompetency, and anything in any law to the contrary was inconsistent with the constitution, and must yield, and the constitution prevail. It is said the particular manner of removal from office pointed out by the statute, it being introductive of a new law, is, impliedly, prohibitory of any other mode. But certainly, it can not be meant thereby, that any subsequent law or constitutional provision can not effect a change in such mode of removal.

The only plausible ground that we can see for the claim that the particular manner of removal prescribed by the statute yet remains the exclusive mode of removal from this office, is upon the presumed intention of the framers of the constitution ; that, inasmuch as there was a special mode of removal from this particular office already provided for, this formed an exceptional case, and that the general power of removal given by the constitution did not contemplate and was not intended to apply to this special case, where there had already been a careful provision made by law for removal from office, and a special mode of proceeding prescribed. There would be more of ground for such claim had the power of removal given by the constitution been for only the same causes as named in the act. By the statute, the only causes for removal from the office were misdemeanor or malfeasance in office. But it was thought proper, by the constitution, that incompetency should be a ground of removal from office, and accordingly power is given to the Governor, where he appoints, to remove from office for that cause, in unlimited terms—" to remove any officer whom he may appoint."

The reason for removal for this cause would apply equally in the case of these commissioners as in the case of any other officer, and there is no ground from which to infer an intention that this additional cause of removal from office should

not as well exist with regard to these park commissioners as any other officers.

The constitutional provision is a cumulative remedy, provided to be exercised by the Governor, under his oath of office, applicable alike to all his appointees, whether other specific remedies had been provided or not.

Some point is made upon the word "rights," in the section quoted of the schedule. It is said, the West Chicago Park act of 1869 provided expressly how these commissioners might be removed, namely, by the circuit court of Cook county, and that this is one of the "rights" expressly saved by this section of the schedule. As these relators were not appointed to office until some time subsequently to the adoption of the constitution, we do not understand how, at the time when the constitution was adopted, they had any rights to be affected or to be saved by that instrument. It can not be regarded as a right of the office itself,—an attribute of it. No such right as that was referred to by the word "rights," there used.

It is lastly objected, that this power of removal does not extend to these commissioners because they are "corporate authorities," as defined by this court, such authorities being "those municipal officers who are either directly elected by the people to be taxed, or appointed in some mode to which they have given their assent;" that the constitution does not give to either the legislature or the Governor the right to appoint corporate authorities; that though it be true that the people of West Chicago, by adopting the Park act, consented to the appointment of these commissioners by the Governor, to be removed by the circuit court, yet his power to appoint comes from that consent, and not from the constitution; and it is claimed that instrument gives no power to the Governor to appoint corporate officers or to remove them, as it must be construed in the light of the decisions of this court, and that the general language of this section 12 of the constitution must not be held to embrace such corporate authorities.

We know of no decision of this court which affords foundation for this objection. The point seems to be that the power of appointment comes from the consent of the people of the park district, and that the people, by the adoption of the Park act, have consented only to the appointment of these commissioners by the Governor, to be removed by the circuit court—that the consent is given qualified with this limitation in respect to removal from office. The people having adopted the law providing that the Governor might appoint the officers, the appointments made thereunder are the Governor's appointments, and not in any proper sense the appointments of the people of the municipality. The objection seems to assume, that the act depending for its validity upon the vote of adoption by the people, it can not be afterward changed in its provisions except through the consent of the people. But this court has decided it to be competent for the legislature to pass amendatory acts affecting these parks, although not submitted to a vote of the people. *People* v. *Brislin,* 80 Ill. 423; *Andrews* v. *People,* 83 id. 529; and surely a constitution may do as much.

If the law was thus subject to amendment in other respects, as decided, there is no reason to say there could not be superadded an additional cause of removal from office, with right in the executive of the State to exercise the power to remove. Any vacancy thereby made would still be filled by appointment of the Governor, as provided in the original act adopted by the popular vote.

It being found that the power of removal existed in the Governor, the inquiry remains whether it was validly exercised. Relators say not—that the power granted was judicial in its nature, and should have been exercised according to judicial methods, that is, there should have been a specific charge, notice of it, opportunity for defense and hearing, and proof to support the charge. Undoubtedly, the Governor can only remove for some one of the causes specified; but the removal here was for one of these causes—incompetency. The Governor

ascertained the existence of the cause here, and made the removal on account of it. The constitution is silent as to who shall ascertain the cause of removal or the mode of its ascertainment. It simply gives to the Governor the power to remove any officer whom he may appoint, in case of incompetency, etc. It follows, then, that it is with the Governor, who is to act in the matter, to determine, himself, whether the cause of removal exists, from the best lights he can get, and no mode of inquiry being prescribed for him to pursue, it rests with him to adopt that method of inquiry and ascertainment as to the charge involved which his judgment may suggest as the proper one, acting under his official responsibility, and it is not for the courts to dictate to him in what manner he shall proceed in the performance of his duty, his action not being subject to their revision. The constitution of this State not only declares that the powers of the government of the State shall be divided into three distinct departments, but has expressly prohibited the exercise of any of the powers properly belonging to one by either of the others.

In the case of *The People* v. *Bissell,* 19 Ill. 229, where this court discussed very fully the theory of distribution of powers, and the extent of limitations upon each department, it was said: " The Governor is and must be as independent of us as is the legislature, or as we are of either of them." P. 232. "When acting within the limits assigned to each, neither can control nor dictate to the others." P. 233.

The case of *The People* v. *Higgins,* 15 Ill. 110, is a parallel one with the present, except that the power of removal was exercised there by trustees of an institution instead of the executive, and it covers in principle the precise question here raised, and must, we think, be considered as decisive of it against the relators. The case is a very fully considered one, and contains so full an exposition of the principles applicable to this subject, that further enlargement upon them is superfluous. The case involved the title to office of the medical superintendent of the Illinois Hospital for the Insane, an

institution founded by the State. The medical superintendent was an officer constituted by the act creating the trustees who, as a body corporate, governed the institution. His tenure of office was for ten years. Under the law, power was given to the trustees to remove the superintendent for infidelity to the trust reposed in him, or incompetency to the discharge thereof. The trustees removed Higgins, the superintendent, by resolution, for the reason alleged that he did not " possess the kind of qualifications which are necessary to the discharge of the duties of said office." It was there insisted, as here, that specific and formal charges should have been preferred against the superintendent; that he should have had a formal notice of the time and place of the trial of the charges; and that a regular trial should have been had upon the testimony of witnesses. To which the court answered : " The statute has made none of these formalities necessary, nor does the common law so interpose and attach itself to the statute as to require them." It was said that the trustees, in determining as to the existence of the cause of removal, might act upon their own observation, and exercising their own best judgment, as well as upon facts detailed by others or upon the opinions of witnesses. The case answers the objection made here, that the executive order of removal is void upon its face, as not stating any lawful ground of removal. In stating the cause of removal, the order has adopted the very language employed in the *Higgins case,* which the court held there as describing " incompetency," as being language equivalent thereto—a delicate and inoffensive form of stating that cause of removal. The order, then, does state that cause of removal, the language used to describe it having the warrant of judicial sanction.

In other cases this court has decided, that where the law has vested a *quasi* judicial power, even in subordinate administrative officers, the court will only inquire whether the officer has acted within the power, and will not attempt to substitute its own judgment or discretion for that of the officer, and will not supply any other conditions to the exercise of their discre-

tionary power than such as the law has provided. *Spencer & Gardner* v. *The People,* 68 Ill. 510; *Elliott* v. *City of Chicago,* 48 id. 293; *Porter* v. *Rockford, Rock Island and St. Louis R. R. Co.* 76 id. 561. The doctrine of these cases applies with added force to a case of executive action.

The case of *The People* v. *Higgins* is abundantly supported by well considered decisions in other States. In *People* v. *Stout,* 19 How. Pr. 171, it was held: "Where the right. to remove a public officer is vested, by legislative or constitutional enactment, in a particular person or body, *for cause,* or upon notice to the incumbent, and no right of appeal or review has been expressly given by law, this court has no power or authority to inquire into the discretion exercised by such person or body, or in any manner to review such removal." In *State* v. *Doherty,* 25 La. Ann. Rep. 119, it was said, in the opinion of the court: "The grant of power to the executive to remove an officer for a certain cause, implies authority to judge of the existence of that cause. The power vested exclusively in executive discretion can not be controlled in its exercise by any other branch of the government. To institute the inquiry as to the correctness of the cause for which the Governor removed the defendant, would be a direct attack upon the independence of the executive, and a usurpation of power subversive of the constitution." And see, also, to the like effect, *Attorney General* v. *Brown,* 1 Wis. 513; *Keenan* v. *Perry,* 24 Tex. 253. Any decision that may be found to the contrary is exceptional. The doctrine of the cases cited is the strongly prevailing authority upon the subject.

The conclusion is, that the power of removal from office in the present case existed in the Governor; that the manner of his exercise of the power can not be questioned by the courts, and must be held valid.

The judgment of the court below must, therefore, be reversed.

*Judgment reversed.*