## WILLIAM McCOY

v.

## CITY OF CHICAGO ET AL.

*Municipal Corporations—Notices—Publication of—Injunction—Foreign Language—Constitution—Jurisdiction.*

1. Questions involving the construction of the constitution without involving the validity of a statute, are within the concurrent jurisdiction of the Supreme and Appellate Courts.

2. Upon a bill filed by a taxpayer of the city of Chicago to enjoin it from entering into any contract for, or the paying of any money for publishing in the German language matters and things required by law or ordinance to be published in a newspaper, this court holds that under the State constitution, such publications must be in the English language alone.

[Opinion filed October 28, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. FRANCIS ADAMS, for appellant.

The publications in question are prohibited by the constitution. Section 18 of the schedule to the constitution is as follows: " All laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings shall be conducted, preserved and published in no other than the English language."

Matters, the publication of which is authorized or required by the city charter, are within the constitutional prohibition, as will be evident from examination of the charter. It is alleged in the bill and admitted in the answers that the city of Chicago, in May, 1875, became organized under "An act to provide for the incorporation of cities and villages," approved April 18, 1872. The following matters are required by that act to be published in a newspaper : All ordinances imposing any fine, penalty, imprisonment or forfeiture, or making any appropriation. Starr & C. Ill. Stat., 474, par. 65. The city treasurer's annual report to the city council. Ib. 482 par. 98. The city collector's annual report. Ib. 483, par. 102. Notices of application for the confirmation of special assessments. Ib. 496, par. 143. City collector's notices of special assessment warrants in his hands. Ib. 500, par. 153.

Ordinances are clearly within the prohibition of the constitution. When passed in pursuance of authority conferred by the Legislature they are local laws, and are to be regarded as if passed directly by the State Legislature. Dillon on Mun. Corp., 3d Ed., Sec. 308, and note 1; Mason v. Shawneetown, 77 Ill. 533, 537.

If not strictly "laws of the State," they are laws passed by the authority of the State, and are within the spirit of the inhibition. It is as necessary that inhabitants of the State, ignorant of the English language, shall have knowledge of the general laws of the State as of merely local laws, and it would be inconsistent, if not absurd, to interpret the constitutional provision as prohibiting the publication of the former in any other than the English language, and not of the latter.

An ordinance is not only a local law, but it is a " legislative proceeding," and as such, within the words of the prohibition. The reports of the city treasurer and city collector are "official writings," as are also the city collector's notices of warrants in his hands for collection.

Notices of application for the confirmation of special assessments are required to be given by the commissioners appointed by the court to make the assessment. The com.

missioners are officers of the court, and the notices are given in the course of "judicial proceedings," and are the process which gives the court jurisdiction to act in the premises. The publication of such a notice is, in contemplation of law, constructive service on the owners of the lots assessed. Murphy v. People, 120 Ill. 234, 236; Murphy v. Peoria, 119 Ill. 509, 513, 514.

The matters, therefore, required to be published by the city charter, are such that they can not, in view of the constitutional inhibition cited, be published by the city, at the expense of the taxpayers, in any other than the English language.

But the opposing counsel contends that the constitutional prohibition does not apply to the publications in question, and that the charter of the city authorizes such publications. It is therefore necessary to consider the charter provisions relied on.

Mr. A. F. STEVENSON, for appellees.

The publishing of council proceedings, notices, etc., in newspapers printed in the German language is not a new thing in this country; it is done in all large cities where there is a large number of German-American citizens, and so cheerfully has this kind of publication been acceded to by the English-speaking population that only two cases can be found in which this matter has been brought before the courts. They are found in Watson v. City of Cincinnati, 2 Cincinnati Sup. Ct., p. 84, and in Kellogg v. City of Oshkosh, 14 Wis. 632, in both of which cases the courts passed favorably upon the power of the common council to publish in newspapers printed in the German language.

It may also be urged that it has been the custom in this city and other places, for over thirty years, to publish these proceedings, notices, etc., in a newspaper printed in the German language; and if the Legislature had deemed it a wrong to taxpayers they could have passed laws long ago prohibiting such publication. But, on the contrary, the Legislature has passed acts from time to time indorsing such publication.

Dillon on Municipal Corporations, 3d Ed., Sec. 87, says: "It is a principle of very extensive operation that statutes of a general nature do not repeal, by implication, charters and special acts passed for the benefit of particular municipalities, but they do so when this appears to have been the purpose of the Legislature."

The same authority, in the latter part of Sec. 93, says: 'But general and long continued usage is not without its importance, and usage of this character may be resorted to in aid of a proper construction of the charter or statute, but no further. If the language be uncertain or doubtful, a uniform, long-established and unquestioned usage will be regarded by the courts in determining the mode in which powers may be exercised, and to a reasonable degree in determining the scope of the powers themselves," * * * to which appears the following foot-note:

"When the true construction of a charter admits of doubt, and the construction adopted by the city authorities has been acquiesced in generally and acted upon by third persons in good faith in their transactions with the city, it will be precluded by the courts, in actions by such third parties, from denying its construction to be the true one." Van Hostrup v. Madison City, 1 Wall. 291.

Gary, P. J. This is a bill filed by a taxpayer of the city of Chicago to enjoin it from making any contract with the German-American Publishing Company, one of the appellees, for, or paying any money of the city to that company for publishing in the German language those matters and things required by law, or any ordinance of the city to be published in a newspaper.

The only question in the case is, whether the city has a right to expend the money of the city for that purpose. If it has no right to so expend the money, the right of the appellant to an injunction is beyond dispute. Wright v. Bishop, 88 Ill. 302, and many cases there cited.

In 1875 the city was incorporated under the act of 1872, provided for the incorporation of cities and villages. Before

such corporation Sec. 15, Chap. 3, of the Charter of 1863, contained a provision that the common council might in its discretion provide for such publication. By an act of March 9, 1867, it was provided that " the proceedings, notices and ordinances of the city and the departments, shall be published in the newspaper, printed in the German language, having the largest daily circulation in said city," etc. This act effectually repealed, by repugnancy, the former provision of the charter, by taking from the city all discretion as to such publication, either as to publishing at all, or in what paper. Then came the act of March 10, 1869, which required the common council biennially, on the second Monday in December, or as soon thereafter as might be, beginning in 1869, to designate the German newspaper for publication, etc. The only effect this act had upon the imperative provisions of the act of 1867, was to fix the time when the common council should designate the paper in which the publication should be made. None of these provisions are in form or substance, in whole or in part, incorporated in the general act of 1872. In various sections of that act, publication of ordinances, notices, etc., in a "newspaper" is required, but with no mention of the language in which that newspaper shall be printed. It is not a pertinent inquiry in this case, whether the general act of 1872 repeals the charter provision of 1863, as was held to be the case as to other special provisions in Law v. People, 87 Ill. 385, and Cairo v. Bross, 9 Ill. App. 406. It is too clear for argument that that provision, making this act discretionary, is superseded, and therefore repealed by the subsequent legislation, making the same act compulsory, and prescribing the manner and time of doing it, with restrictions added. From 1869 to 1875 the city could not have justified such publication, without complying with the acts of 1867 and 1869, by referring to the charter of 1863 as their authority, and the repeal of those acts did not revive the charter provision. The appellee's counsel concedes that the legislation of 1867 is inconsistent with the general law of 1872, and that concession carries the act of 1869 also.

The counsel, however, insists, that even if the charter pro-

vision of 1863 is not in force, yet, without any express power to be found in any legislation, the city has the discretion, because of the benefit, to publish in German, from the general powers conferred upon the common council by Sec. 63, Art. 5 of the act of 1872, and specially by clauses 94 and 96 of that section. Whatever might otherwise be the force of that argument it is met and overcome by the 18th section of the schedule of the constitution, that "all laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings, shall be conducted, preserved and published in no other than the English language."

It is true that this section would be an objection to the validity of the charter provision of 1863, if that had not been repealed by the acts of 1867 and 1869; and if there had been no such repeal, and if it was not repealed by the act of 1872, this court would have, under the law conferring jurisdiction, no power to decide the question; but the views already stated leave no such question in the case. Questions involving the construction of the constitution, without involving the validity of a statute, are within the concurrent jurisdiction of the Supreme Court, and of this court; of the Supreme Court by Sec. 88 of the Practice Act of 1872, and of this court by Sec. 8, as amended in 1887, of the Appellate Court Act of 1877. This section of the constitution has no reference to individual conduct. It is no restraint upon private enterprise.

The publisher of a newspaper in any language may translate and publish as much as he pleases of the laws, official writings, and executive, legislative and judicial proceedings in this State, without offense. But it is a restraint upon official conduct, and as stringent upon publishing as it is upon conducting and preserving such laws, etc. If the city may publish at public expense in German, why may it not pass ordinances and conduct its business in Greek?

This constitutional provision is the only express law on the subject; yet, if even the directors of a school district should attempt to keep their records in a foreign language, it would seem absurd to everybody. "Official," as an adjective, is derived from "office," as a substantive, and by the constitu-

tion, Sec. 24, Art. 5, " an office is a public position, created by the constitution or laws, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed." Every officer of the city is within that definition. Wilcox v. People, 90 Ill. 186.

Their acts as officers are official; the record of their acts as officers are " official writings," to be " preserved and published in no other than the English language."

The constitution of 1848 contained the same prohibition, and though the question might have been made long ago, it never has been; but no provision of the constitution becomes obsolete by neglect.

The decree of the Circuit Court dismissing the bill is reversed and the cause remanded, with directions to perpetually enjoin the city, as prayed in the bill, and that the appellant recover his costs. The costs both here and in the Circuit Court are to be paid by the German-American Publishing Company.

*Reversed and remanded.*